### DENVER & R. G. R. CO. v. BAER BROS. MERCANTILE CO.

(Circuit Court of Appeals, Eighth Circuit.  May 18, 1911.)

No. 2,997.

*(Syllabus by the Court.)*

COMMERCE (§ 87*)—INTERSTATE COMMERCE COMMISSION—POWER TO ORDER REPARATION OF EXCESSIVE RATES.

In a proceeding before the Interstate Commerce Commission to recover damages on a complaint by a shipper that the amount collected by the carrier at the lawfully established rate had been excessive because that rate was unreasonable, the finding and prescription by the commission of a reasonable maximum rate to be observed in the future and an order by the commission forbidding the use of a rate in excess thereof are conditions precedent to its exercise of its power to order reparation.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 87.*]

In Error to the Circuit Court of the United States for the District of Colorado.

Action by the Baer Bros. Mercantile Company against the Denver & Rio Grande Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

T. L. Philips (E. N. Clark and J. F. Vaile, on the brief), for plaintiff in error.

William B. Harrison, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. It is 923 miles from St. Louis, Mo., to Pueblo, Colo., and the Missouri Pacific Railway Company operates a railroad between those towns. It is 160 miles from Pueblo to Leadville, Colo., and the Denver & Rio Grande Railroad Company operates a railroad between those cities. Between July 11, 1902, and March 17, 1907, these companies carried thousands of pounds of beer from William J. Lemp Brewing Company at St. Louis to Leadville, in Colo., for Baer Bros. Mercantile Company, a corporation, at the lawfully established rates. The act of 1906 to amend the act of February 4, 1887, to regulate commerce (U. S. Comp. St. 1901, p. 3154), was approved on June 29, 1906 (Act June 29, 1906, c. 3591, 34 Stat. 584, 595 [U. S. Comp. St. Supp. 1909, pp. 1149, 1168]). On May 6, 1907, the Baer Company filed its complaint with the Interstate Commerce Commission against these railroad companies, wherein it alleged that between July 11, 1902, and March 17, 1907, they collected from it $7,299.27 more than they would have collected if they had charged only reasonable rates for the transportation of the beer, and it prayed (1) that the commission would order the companies to cease from collecting such unreasonable rates; (2) that it would make an order fixing a reasonable rate for the through transportation of the beer in car load lots from St. Louis to Leadville; and (3) that it would order the railroad companies to pay it $7,299.27 as a reparation for the damages sustained by it in consequence of their unreasonable exactions. On April 6, 1908, after a full hearing on this complaint, the commission filed its report to the effect, among other things, that the beer moved on the local waybills of the two companies at the published rate of the Missouri Pacific Company from St. Louis, Mo., to Pueblo, which was sometimes 45 cents and sometimes 50 cents per hundredweight and was a reasonable rate, and at the local rate of the Denver & Rio Grande Company from Pueblo to Leadville; which was 45 cents per hundredweight and was 15 cents in excess of a reasonable rate, and it ordered the Rio Grande Company to pay to the Baer Company $3,438.27, but it did not prescribe what should be the reasonable rate to be thereafter observed as the maximum rate to be charged for this transportation service, nor did it prohibit the Rio Grande Company from continuing to charge and collect the rate of 45 cents per hundredweight which had been in force during all the transportation in question. Upon this order for the repayment of the $3,438.27, the Baer Company brought this action against the Denver & Rio Grande Company, alone, and at the close of the trial the court directed a verdict and rendered a judgment against that company. This judgment is assailed on the grounds: (1) That the transportation by the Denver & Rio Grande Company from Pueblo to Leadville was wholly within a single state, was not under any through joint rate, and was of property not shipped to

or from a foreign country from or to any state or territory so that it was beyond the control, and the claim for reparation was without the jurisdiction of the Interstate Commerce Commission (chapter 3591, § 1, 34 Stat. 584). (2) That the order for reparation was unauthorized and without the jurisdiction of the Interstate Commerce Commission because it was not founded upon or accompanied by any order establishing a maximum rate to be charged and requiring conformity thereto (chapter 3591, § 4, 34 Stat. 589, amending section 15 [U. S. Comp. St. 1901, p. 3165]). (3) That the payments for which the Baer Company seeks reparation were voluntary. (4) That in the trial of the case competent and material evidence was excluded.

These facts were conclusively established at the trial: There never was any joint through rate for the transportation of beer from St. Louis to Leadville over the Missouri Pacific Railway and the Denver & Rio Grande Railroad, and there never was any conventional or other division of any joint through rate for such transportation between the companies owning these railroads. Each company maintained during all the transportation in question its lawfully established and independent local rate over its own railroad and the beer moved at the sum of these local rates. Each shipment was accompanied with an order delivered to the Missouri Pacific Railway Company by the Lemp Brewing Company at St. Louis to send the beer to the Baer Company at Leadville via the Denver & Rio Grande Railroad Company, and the Missouri Pacific Company gave a receipt which described each shipment and acknowledged its receipt "in good order from Wm. J. Lemp Brewing Company, by Missouri Pacific Railroad Co. to be delivered to The Baer Bro. Mercantile Co. at Leadville, Colo. via. D. & R. G." No bill of lading was ever issued. Each shipment was waybilled to Pueblo at the Missouri Pacific local rate because that company had no through rate or billing arrangements thereon at Pueblo. Each shipment was delivered by the Missouri Pacific Company to the Denver & Rio Grande Railroad Company with a transfer sheet or expense bill which described the shipment and disclosed the freight charges of the Missouri Pacific Company or contained the statement that they were paid, the origin and destination of the shipment, the consignor and the consignee. The Denver & Rio Grande Company received the shipment at Pueblo and billed it from that city to Leadville over its railroad at its local rate of 45 cents per hundredweight, naming therein the Missouri Pacific Company as the consignor and the Baer Company as the consignee. The transfer sheet and the waybill conveyed the same information that would have been conveyed had the shipment been made by any other party at Pueblo from that city to Leadville. The local rate of 45 cents per hundredweight in car load lots from Pueblo to Leadville was in force from 1898 until after 1907, and in that year, after the Interstate Commerce Commission had requested that all local rates should be filed, the Denver & Rio Grande Company filed that rate with the commission. When the first shipment of the beer was delivered to the Denver & Rio Grande at Pueblo, it paid the Missouri Pacific its charges thereon at its published rate and after its arrival at Leadville and after the Baer Company had received and unloaded it the Baer Com-

pany paid the sum of the charges of both companies to the Denver & Rio Grande Company, and protested that those charges were excessive. The Lemp Company paid the charges of both railroad companies to the Missouri Pacific on all the subsequent shipments of the beer throughout the five years some days after the shipments were, respectively, made, wrote across the bills it paid the words, "paid under protest," and the Missouri Pacific Company paid to the Denver & Rio Grande Company the latter's charges upon these shipments at its local rate of 45 cents per hundredweight for carload lots.

Upon this state of facts counsel for the Denver & Rio Grande Company insist that the reasonableness of the rate of that company upon beer from Pueblo to Leadville was not within the jurisdiction of the Interstate Commerce Commission because the transportation the railroad company conducted was wholly within the state of Colorado on independent contracts made by itself to carry this beer on its railroad at its local rate, because there never was any through joint rate for its transportation from St. Louis to Leadville, or any conventional or other division of such a rate between the railroad companies, or any through bill of lading, because the Missouri Pacific Company never contracted and never had any authority from the Denver & Rio Grande Company to contract to transport beer from Pueblo to Leadville over the railroad of the latter, and the only contract of the Missouri Pacific Company was to carry it from St. Louis to Pueblo over its railroad at its local rate and to deliver it to the Denver & Rio Grande Company at that place, and the Missouri Pacific Company was a forwarder at Pueblo and not a contractor for the transportation of the beer over the railroad of the Denver & Rio Grande Company. This contention is not without great persuasive force (Gulf, Colorado & Santa Fé R. R. Co. v. Texas, 204 U. S. 403, 412, 413, 414, 27 Sup. Ct. 360, 51 L. Ed. 540; Interstate Commerce Comm. v. Bellaire, Z. & C. Ry. Co. [C. C.] 77 Fed. 942, 943; United States v. Chicago, K. & S. R. Co. [C. C.] 81 Fed. 783; Kentucky & I. Bridge Co. v. Louisville & N. R. Co. [C. C.] 37 Fed. 567, 630, 2 L. R. A. 289; United States v. Colorado & N. W. R. R. Co., 85 C. C. A. 27, 34–37, 157 Fed. 321, 328–331, 15 L. R. A. [N. S.] 167), but it is unnecessary to a disposition of this case to determine the question it presents and without intimation that the contention is either sound or unsound the question is passed without decision.

[1] Conceding then, but neither deciding nor admitting, that the reasonableness of the rate of the Denver & Rio Grande Railroad Company on beer in car load lots from Pueblo to Leadville and the Baer Company's claim for reparation on account of its alleged unreasonableness were within the jurisdiction of the Interstate Commerce Commission, had that commission authority to order such reparation without prescribing what would be a reasonable maximum rate to be observed in the future and making an order that the carrier should not thereafter demand or collect any rate in excess of the maximum rate so prescribed?

The chief purpose of the act to regulate commerce and its amendments was to prevent unjust preferences and undue discriminations and to secure uniformity of rates and service. Interstate Commerce

Comm. v. Cincinnati, New Orleans & Texas Pac. Ry. Co., 167 U. S. 479, 494, 17 Sup. Ct. 896, 42 L. Ed. 243; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 439, 27 Sup. Ct. 350, 51 L. Ed. 553. The rate which the Denver & Rio Grande Company charged and collected was a lawfully established rate. It had been in force for more than eight years when the complaint before the commission was filed. If, as that commission found, it was unreasonable, no one could determine how unreasonable it was, until that body determined what a reasonable maximum rate would be and prohibited a rate in excess thereof. There was not, is not, and never will be any standard by which the reasonableness of the rate may be measured until such an order is made. Witness the claim of the Baer Company that the amount collected by the Denver & Rio Grande Company was $7,299.27 more than would have been collected at a reasonable rate, the denial of the railroad company that it was in excess of the amount collectible at the reasonable rate and the finding of the commission that it was $3,438.27 in excess of such an amount. In the light of these facts, it is obvious that, in the absence of the establishment of a standard of reasonableness by an order of the commission, an undue preference and an unjust discrimination is likely to arise from every such order of reparation, and the main object of the interstate commerce law is likely to be defeated thereby. Other shippers have been and all shippers continue to be required to pay the railroad company's established rate of 45 cents per hundredweight under the penalties denounced by section 1 of the interstate commerce act as amended for receiving any rebate or concession from that rate (Act June 29, 1906, c. 3591, § 2, 34 Stat. 587, 588 [U. S. Comp. St. Supp. 1909, pp. 1155, 1156]), and their only chance of relief is an order of reparation like that granted to the Baer Company for some indeterminate amount.

It was in view of these circumstances that the Supreme Court decided in 1907 in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 440, 448, 27 Sup. Ct. 350, 51 L. Ed. 553, that a shipper seeking reparation on account of the unreasonableness of a rate could maintain no action in the state courts therefor until the Interstate Commerce Commission had prescribed a reasonable maximum rate for the future and had prohibited the use of a rate in excess thereof and had thereby fixed a uniform standard of reasonableness. The argument was made in that case that the same danger of preferences and discriminations would result in such cases from orders of reparation by the commission as from judgments of reparation by the courts, and the answer was that, when the commission is called upon on the complaint of an individual to consider the reasonableness of an established rate, its power is invoked not merely to authorize a departure from such rate in favor of the complainant, but to exert the authority conferred upon it by the act, if the complaint is found to be just, to compel the establishment of a new rate applicable to all; that the difference between the two cases is that a judgment of reparation by a court which could not, and hence would not, establish a new rate applicable to all, would destroy the uniformity of rates which it was the object of the statute to secure, while an order of reparation by the

commission accompanied by and founded upon an order establishing a new maximum rate applicable to all would enforce the equality and uniformity which the statute commands. 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553. By the same mark an order of reparation made by the commission in such a case which is not accompanied by and based upon an order establishing a new rate applicable to all destroys the uniformity of rates which it was the object of the statute to secure and is unauthorized and void.

The proceeding before the commission in this case was instituted by a complaint filed with that body by the Baer Company and a full hearing was had thereon as provided in section 13 of the interstate commerce act. That act provides by section 15, as amended (34 Stat. 589), that in such a case it shall be the duty of the commission, whenever it is of the opinion that any rates charged are unjust or unreasonable, "to determine and prescribe what will be the just and reasonable rate or rates, charge or charges, to be thereafter observed in such case as the maximum to be charged," and "to make an order that the carrier shall cease and desist from such violation, to the extent to which the commission find the same to exist and shall not thereafter publish, demand or collect any rate or charge for such transportation in excess of the maximum rate or charge so prescribed." The following section of the act as amended then provides that if, after such a hearing, the commission shall determine that any complainant is entitled to an award of damages for a violation of the act, it may make an order directing the carrier to pay the amount thereof. The original act of 1887 did not impose the duty upon the commission upon a complaint for reparation on account of the unreasonableness of an established rate to determine what should be the reasonable maximum rate to be observed in the future and to make an order prohibiting the use of a higher rate, and the commission held under that state of the law that an order prescribing a future rate was in no way connected with an order for reparation and that the right to make one was not necessarily conclusive of the right to make the other. Cattle Raisers' Ass'n v. C. B. & Q. R. Co., 10 Interst. Com. R. 83, 90. Congress and the Supreme Court seem to have perceived the vice and injustice of that state of the law, the undue preferences and unjust discriminations for which it gave opportunity and to which it gave unavoidable effect, and the gross injustice to which it subjected carriers who were required under drastic penalties to collect the established rates subject to a liability to repay to such of the shippers as might complain such indeterminate amounts as the commission might deem the amounts collected under the varying proofs in the various cases to be in excess of those which would have been collected in each case under what the commission might deem after the event to have been a reasonable rate. That condition of the law was intolerable, and the Congress so amended it in 1907 as to impose upon the commission the imperative duty in each case of this character, where after hearing it is of the opinion that a rate was unreasonable, to prescribe a reasonable maximum rate applicable to all, and to order the carrier to desist from the use of a rate in excess thereof. After this amendment the Interstate Commerce

Commission said in A. J. Poor Grain Co. v. C. B. & Q. Ry. Co., 12 Interst. Com. R. 418, 423:

"Nor may this commission authorize a carrier to make a refund from the charges collected on the basis of the published rate, or otherwise to depart from the published rate, unless, upon a hearing or upon an admission of the carrier, the commission finds that rate to be discriminatory or unreasonable in amount and orders the establishment of a different rate."

And in Pueblo Transportation Ass'n v. Southern Pacific Company, 14 Interst. Com. R. 82, 84, the commission said:

"The act to regulate commerce authorizes this commission to condemn an unreasonable rate, to prescribe a rate to be applied in lieu thereof, and to award damages under the rate so condemned; but in all proceedings before the commission, both formal and informal, the essential prerequisite to any award of damages is the condemnation of a rate, rule, or practice as unreasonable and the establishment in lawful tariff publication of the rate, rule, or practice that is made the basis of such award."

The facts that this prerequisite is indispensable to equality and uniformity in the administration of this law and that orders of the commission not accompanied by and based upon it present patent opportunities for and inevitably effect preferences and discriminations which it was the object of the statute to prevent, the express terms and evident purpose of the amendments of 1906, which have been recited, the opinion of the Supreme Court in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 440, 448, 27 Sup. Ct. 350, 51 L. Ed. 553, and the decisions of the Interstate Commerce Commission which have been cited, converge to convince that in a case of the character of that in hand the establishment by order of the commission of a maximum reasonable rate applicable to all and by which all future exactions shall be judged is a condition precedent to the exercise by the commission of the power to order reparation. And the conclusion is that, in a proceeding before the Interstate Commerce Commission, to recover damages on a complaint by a shipper that the amount collected by the carrier at the lawfully established rate has been excessive because that rate was unreasonable, the finding and prescription by the commission of a reasonable maximum rate to be observed by all, and an order by the commission prohibiting the use of a rate in excess thereof, are conditions precedent to the exercise of its power to order reparation. An order of reparation without such an establishment of a reasonable maximum rate is beyond the power of the commission and void, and as no such rate was prescribed and no order forbidding the future use of an excessive rate was made in the case in hand the commission's order of reparation in this case was beyond its power and void.

This conclusion disposes of the case in hand, and renders it impossible for a judgment to be obtained against the railroad company upon the reparation order of the commission upon which the action is based. It is therefore unnecessary to consider the other questions in the case, and the judgment below is reversed.