## BAER BROS. MERCANTILE CO. v. DENVER & R. G. R. CO.

(District Court, D. Colorado.    September 26, 1912.)

No. 5,611.

1. COMMERCE (§ 94*)—INTERSTATE COMMERCE ACT—ACTION BY SHIPPER TO ENFORCE AWARD OF DAMAGES—PLEADING.

A petition against an interstate carrier filed under section 16 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165]), as amended by Act June 29. 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1911, p. 1301), to enforce payment of an award of damages made to petitioner by the Interstate Commerce Commission under said section, which is required to "set forth briefly the causes for which he claims damages," must comply with the rules of pleading by tendering an issue as to such causes by alleging that the rates charged were unreasonable or discriminatory or otherwise in violation of the act, and it is not sufficient to set forth the proceedings of the Commission so finding, since it is not the function of the court merely to execute the order of the Commission, but the proceeding is a judicial one, in which the defendant is entitled to a trial by jury, and such order and findings are only prima facie evidence of the facts stated therein.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 94.*]

2. COMMERCE (§ 94*)—INTERSTATE COMMERCE ACT—ACTION BY SHIPPER TO ENFORCE AWARD OF DAMAGES—PLEADING.

An allegation in such a petition that "said Commission agreeable to the provisions of law in that regard duly" caused a copy of its order to be delivered to the defendant is not a sufficient allegation of the service of such order, but there must be a direct averment of such service and the manner thereof in terms so clear as to permit an issue of fact.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 94.*]

3. COMMERCE (§ 85*)—POWERS OF INTERSTATE COMMERCE COMMISSION—FIXING RATES.

The power given the Interstate Commerce Commission by section 15 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165]), as amended by Act June 29, 1906, c. 3591, § 4, 34 Stat. 589 (U. S. Comp. St. Supp. 1911, p. 1297), to establish through routes and joint rates on complaint of unreasonable or excessive charges on through shipments is permissive only, and where there is a through route, but no through rate established, and the charge complained of is a combination of the separate rates over connecting lines, the Commission may revise the rate over one of such lines only as applied to the through transportation if it deems such rate alone unreasonable or excessive.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. § 85.*]

In Equity.    Action by the Baer Bros. Mercantile Company against the Denver & Rio Grande Railroad Company to enforce payment of reparation awarded plaintiff by orders of the Interstate Commerce Commission.    On demurrer to complaint.    Sustained in part, and overruled in part.

William B. Harrison, of Denver, Colo., for plaintiff.

E. N. Clark and R. G. Lucas, both of Denver, Colo., for defendant.

POPE, District Judge.    This is a suit in two counts seeking to enforce the payment of reparations awarded plaintiff by two orders of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Interstate Commerce Commission. It has been submitted to the court upon a demurrer challenging the sufficiency of each count. The two causes of action are substantially outlined as follows: After setting out the corporate existence of the plaintiff and of the defendant and also of the Missouri Pacific Railroad Company, which constitutes defendant's connecting carrier from Pueblo eastward to St. Louis, plaintiff alleges the shipment of certain beer from St. Louis to Leadville, Colo., over the Missouri Pacific Railroad and the line of the defendant from Pueblo to Leadville. It sets up the compensation for transportation paid under protest, and avers that without payment of these charges it was not possible for petitioner to have had the beer transported from St. Louis to Leadville. The complaint further avers "that the rate or charge demanded and paid for the transportation by said carrier on each of said car loads of beer over their said lines of railroad from the said city of St. Louis to the said city of Leadville, as aforesaid, was a combination of the rate of the said Missouri Pacific Railway from St. Louis to Pueblo" and the rate of the defendant from Pueblo to Leadville, and that the shipment was under a through bill of lading from St. Louis to Leadville. The complaint also alleges that the plaintiff herein filed its petition and complaint before the Interstate Commerce Commission alleging that the rates and charges for transportation of the beer were unjust, excessive, and unreasonable, and that thereupon the defendant filed its answer before the Commission, and the Commission thereupon adjudged the rate to be excessive, and provided that for a period of two years beginning February 1, 1910, the rate charged by the defendant should not exceed 30 cents per hundred pounds, and the Commission further ordered reparation to plaintiff for past overcharges in the sum of $723.56. It is further alleged as follows: "That thereafter said Commission, agreeable to the provision of law in that regard duly caused a properly authenticated copy of its said report, together with the order aforesaid, to be delivered to the said defendant, the Denver & Rio Grande Railroad Company," and that, said company having failed, neglected, and refused to comply with this order, the present suit was brought to recover the amount above named. The second cause of action is in substantially the same terms, except that the proceedings of the Commission set forth do not show the fixing of any future rate to be charged by the defendant company, and with the further difference in the amount for which reparation was ordered by the Commission, and for which judgment is sought in the present suit.

The demurrer is upon four grounds. First. That the complaint has no allegation that the rate charged was unreasonable and excessive or otherwise contrary to law. Second. That there is no allegation of any proper service upon the defendant company, under section 16 of the Interstate Commerce Act, being Act Feb. 4, 1887, 24 Statutes at Large, 379, as amended by Act June 29, 1906, 34 Statutes at Large, 584. Third. That the order set up in the second cause of action is unlawful because there is nothing in this order establishing a rate, and because an order of reparation by the Commission is unwarranted by law unless accompanied by an order establishing a future rate. Fourth. That each

cause of action is fatally defective, in that it appears on the face of the complaint that the Commission did not make a through or joint rate, but merely ordered a refund by defendant out of its local rate, and that the orders of the Commission were therefore void. The third ground of the demurrer was, in view of the decision of the Circuit Court of Appeals of this Circuit in a case between the same parties, being Denver & Rio Grande Railroad Co. v. Baer Bros. Mercantile Co., 187 Fed. 485, 109 C. C. A. 337, confessed by plaintiff on the hearing with prayer for leave to file an amended complaint. This ground of demurrer, therefore, is not for consideration.

[1] Coming to the first ground, which is that the complaint fails to show an unreasonable rate, and therefore no ground for recovery in this respect, the court is of opinion that this ground is well taken. The statute (section 4 of Act June 29, 1906, amending section 15 of Act Feb. 4, 1887) provides that it shall be within the power of the Commission, where rates or charges are "unjust or unreasonable or unjustly discriminatory or unduly preferential or prejudicial or otherwise in violation of any of the provisions of this act," to determine and prescribe what will be the just and reasonable rate or rates, etc. It is further provided by section 5 of Act June 29, 1906, substituting section 16 of the former act, that, where it is necessary to have recourse to the courts of the United States for the enforcement of the order of the Commission, there shall be filed "a petition setting forth briefly the causes for which the complainant claims damages and the order of the Commission in the premises." It will be noted from this that the petition must set forth "the causes for which the petitioner claims damages." Since, as we have seen by the quotation from section 4, above, these causes under the law are that the rates are unjust or unreasonable or unjustly discriminatory or unduly preferential or prejudicial or otherwise in violation of any of the provisions of law, it follows that, to make the petition complete, it must set forth one or the other of these causes. It is not sufficient to set forth the proceedings of the Commission alleging these causes. While these by way of recital show the grounds upon which the Commission proceeded, they do not afford any basis upon which the court may proceed. A long line of authorities show that the functions of the court are not simply to execute the orders of the Commission, but to afford a judicial inquiry surrounded by all the proper judicial safeguards as to whether the orders of the Commission should have been made. Upon questions of fact it is true the finding of the Commission is, under section 5 of Act June 29, 1906, prima facie evidence of the facts at the trial of the cause, but this is a mere matter of evidence, and has no relation to the pleadings. The pleadings must tender an issue as to whether the rates are unreasonable, discriminatory, or otherwise violative of law, and a petition such as this, which does not tender this issue, affords no basis upon which the court may proceed to a judicial determination with the assistance of the jury as to whether the rates were in fact illegal. A brief reference to the authorities will show the relation of the courts to the Interstate Commerce Commission in matters of this kind. Thus in Interstate Commerce Commission v. A. T. & S. F. Ry. Co. (C. C.) 50 Fed. 295, 305,

it is pointed out by Judge Ross that the court is "not a mere executive organ to carry out the orders of the Commission."   In Western N. Y., etc., R. R. Co. v. Penn. Refining Co., 137 Fed. 350, 70 C. C. A. 30, it is said:

"The parties are entitled to an impartial trial by jury, so conducted as to afford to them in full measure the enjoyment of their constitutional right."

In the same case, citing the authorities fully, it is said:

"Additional evidence may be put in by either party and the duty of the court is to decide  *  *  *  upon the entire body of the evidence."

It is also said:

"The cause of action is examined de novo and the proceeding is in a qualified sense independent of the investigation by the Commission."

The court further says:

"Whether a given transportation charge is just and reasonable or unreasonable and excessive is peculiarly a question for the jury."

The proceeding in court is denominated in . Interstate Commerce Commission v. Cincinnati P. & V. R. R. Co. (C. C.) 124 Fed. 630, as "an original, independent responsibility on the court to due inquiry make, exercise its own judgment, and decide causes as they arise or are instituted."

In Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co. (C. C.) 56 Fed. 925, 934, it is said:

"It is impossible to believe that, under this language of the act, the powers of the court in the premises are restricted, as contended for by the Commission.   The provision, 'if it think fit, to direct and prosecute in such mode, and by such persons, as it may appoint, all such inquiries as the court may think needful,' etc., must necessarily authorize the court to provide for the taking and hearing of such additional evidence as may be proper; and the power is equally clear to permit such pleadings as will bring before the court clearly and in legal form such matters as may be pertinent and proper, in view of the issues raised."

In Ky. & I. Bridge Co. v. L. & N. Ry. Co. (C. C.) 37 Fed. 567, 613 (2 L. R. A. 289), it is said by the court:

"We are also clearly of opinion that this court is not made by the act the mere executioner of the commissioner's order or recommendation, so as to impose upon the court a non-judicial power.  *  *  *  The suit in this court is, under the provisions of the act, an original and independent proceeding, in which the Commission's report is made prima facie evidence of the matters of facts therein stated.   It is clear that this court is not confined to a mere re-examination of the case as heard and reported by the Commission, but hears and determines the cause de novo, upon proper pleadings and proofs, the latter including not only the prima facie facts reported by the Commission, but all such other and further testimony as either party may introduce, bearing upon the matters in controversy."

If, as apparently contended by plaintiff's counsel, it is sufficient merely to plead the proceedings before the Commission, then all of these comments upon the independent functions and responsibilities of the courts in the matter lose force, since the only issue tendered by the pleadings is whether the Commission so acted.   That the law did not contemplate this, however, is shown, not only by these authorities, but

by the plain terms of the act, which provides, not only for the setting forth of "the order of the Commission in the premises," but also "the causes for which complainant claims damages." This latter provision of statute would be entirely useless if all that is necessary upon the subject of the grounds of damage is to set forth the grounds before the Commission. I deem it clear from the statute that the grounds presented to the Commission must be reiterated in the pleading addressed to the court, and tender an issue upon which testimony may be taken pro and con, subject only to the provision of law that the "findings and orders of the Commission shall be prima facie evidence of the fact therein stated."

[2] The second ground of demurrer, as above stated, proceeds upon the contention that the complaint does not properly allege the service of the Commission's order upon the defendant. The statute as to the manner of service is as follows (being section 16 of the Act of 1887 as amended by the Act of 1906):

"Every order of the Commission shall be forthwith served by mailing to any one of the principal officers or agents of the carrier at its usual place of business a copy thereof; and the registry mail receipt shall be prima facie evidence of the receipt of such order by the carrier in due course of mail."

The complaint alleges that:

"Thereafter, said Commission, agreeable to the provisions of law in that regard, duly caused a properly authenticated copy of its said report, together with the order aforesaid, to be delivered to the said defendant, the Denver & Rio Grande Railroad Company."

Service upon a corporation being necessarily always in a sense constructive, the only enlightenment afforded by this pleading as to the manner of service, or the officer upon whom served, or the place where served, is the pleader's conclusion that the Commission "duly" acted, and that the Commission acted "agreeable to the provisions of law in that regard." Such allegations are in my judgment insufficient. Service of the order in the terms of the statute being a condition precedent to any suit thereon, the defendant is entitled to a direct averment of such service and the manner thereof in terms so clear as to permit an issue of fact. No statute of Colorado on the subject of pleading has been called to my attention altering the general rule as above stated. The demurrer upon this ground is accordingly also sustained.

[3] The final ground of demurrer is that the order of the Commission in each cause of action was made without authority of law because while the Commission (at least in the first case) fixed a rate for the future, thus bringing the case within Denver & R. G. R. Co. v. Baer Bros. Mercantile Co., 187 Fed. 485, 109 C. C. A. 337, it corrected purely the local rate, to wit, that over the defendant's line from Pueblo to Leadville. It is said that the proper course under section 15 of the act as amended was to have prescribed a through rate from St. Louis to Leadville, leaving it to the carriers to agree among themselves upon the apportionment or division of the through rate. It is said that the Commission, by leaving the rate from St. Louis to

Pueblo intact and by revising the rate simply from Pueblo to Leadville, changed simply the local Denver & Rio Grande rate, and thus deprived that company of the privilege which the statute gave it, of agreeing upon a proper division with its connecting carrier at Pueblo. It is said that the Commission had no power to do this, and in support of this contention the following provisions of the statute (section 15) are quoted:

"Whenever the carrier or carriers, in obedience to such order of the Commission or otherwise, in respect to joint rates, fares, or charges, shall fail to agree among themselves upon the apportionment or division thereof, the Commission may after hearing make a supplemental order prescribing the just and reasonable proportion of such joint rate to be received by each carrier party thereto, which order shall take effect as a part of the original order. The Commission may also, after hearing on a complaint, establish through routes and joint rates as the maximum to be charged and prescribe the division of such rates as hereinbefore provided, and the terms and conditions under which such through routes shall be operated, when that may be necessary to give effect to any provision of this act, and the carriers complained of have refused or neglected to voluntarily establish such through routes and joint rates, provided no reasonable or satisfactory through route exists, and this provision shall apply when one of the connecting carriers is a water line."

We are not, however, impressed with the argument. Reduced to its ultimate contention, it is to the effect that the Commission should have prescribed a joint rate, but without fixing in its order the proportion the defendant should pay, and that, as it did not follow this course, its order was void and nonenforceable as to the reparation ordered and in all other respects. But is the Commission, in fixing a rate for the future, required as a concomitant to an order of reparation to fix a through rate? If to do otherwise was a fatal omission, it was not one of inadvertence, for a reference to the opinion accompanying one of the orders now sued on (Baer Bros. Mercantile Co. v. M. P. Ry. Co., 17 Interst. Com. R. 225) shows that the Commission was urged to establish a joint rate, and that it in terms refused to do so. The Commission said:

"This leaves for consideration the question of the establishment of a through route and a joint rate applicable thereto from St. Louis to Leadville over the lines of the defendants. * * * While it is true that the rate applicable to the shipment between the points named was made up of the combination of the rate from St. Louis to Pueblo and Pueblo to Leadville, we find that a through route actually exists at the present time. It was stated by counsel for complainant during the hearing that the object in filing the complaint was to secure a reasonable rate for the transportation of the beer from St. Louis to Leadville, and that it was in no wise interested in having joint rates made over the lines of the defendants; that the conditions of transportation were entirely satisfactory over the route that existed; and that there were several through routes to which the same rate was applicable over different lines of railroad between the same points. A rate formed by a combination of separate rates over connecting lines such as is here presented has every substantial feature of a through rate, and separately established rates over a through route is expressly recognized in section 6 of the act. The route over which the shipments moved is a through route. There is no break of bulk and no rebilling so far as the consignor and consignee are concerned. When a shipment is accepted by the Missouri Pacific at St. Louis billed by the consignor for delivery at Leadville, the carriage thereof is a continuous movement. As we understand the

law, it does not require us in all cases where no through route and joint rate exists to establish a route and fix a rate applicable thereto, but only empowers us to do so in a proper case for the purpose of giving effect to the act. Loup Creek Colliery Co. v. Virginian Ry. Co., 12 Interst. Com. R. 471."

The Commission further said:

"It does not appear that the interests of the public nor the ends of justice, as between the parties directly interested in this case, will be promoted by the establishment of a joint rate applicable to shipments of beer in car loads over the through route formed between St. Louis and Leadville by the lines of the defendants. Generally speaking, the Denver & Rio Grande does not participate in joint rates to points on its lines in Colorado, but business offered it by its connections is moved on combination rates. A holding therefore that a joint rate should be prescribed for the transportation of beer from St. Louis to Leadville might lead to a revolution in the rate-making system that has applied for many years over the lines of the Denver & Rio Grande without apparent necessity therefor, or without benefit to the shipping public. While not denying our authority upon proper showing to order the establishment and continuance of a joint through route in this case, upon the showing made, we are not sufficiently advised as to justify us at this time in making an order which might entail such consequences."

Was this conclusion justified by the statute? We are of opinion that it was. The Interstate Commerce Acts do not require the Commission in all instances to establish a through route or to fix a joint rate. The very terms of section 15, above quoted, are permissive, being to the effect that "the Commission *may* also, after hearing on a complaint, establish through routes and joint rates," and this only when "it may be necessary to give effect to any provision of this act." By section 6 of the act, as amended, each carrier is to promulgate rates upon three bases: (a) Between different points on its own route; (b) between points on its own route and points on the route of any other carrier when a through route and joint rate have been established; and (c), if there be a through route, but no joint rate, then "the separately established rates, fares and charges applied to the through transportation." As we understand the present situation, both from the pleadings and the opinions of the administrative and the judicial tribunals which have dealt with the matter, the rate with which the Commission was dealing was one of the third class; i. e., "separately established rates" of the two carriers, which combined constituted the charges "applied to the through transportation." We are of opinion that under such circumstances it was proper for the Commission to ignore one of the "separately established" rates—i. e., that of the Missouri Pacific Railroad—that being concededly reasonable and unobjectionable, and to apply its corrective hand to the second of the "separately established" rates—i. e., that of the defendant—that being found to be unreasonable. Of course, the Commission dealt with this latter not as a local rate between Pueblo and Leadville, for that would have been to attempt a regulation of an intrastate rate, but as a segment of an interstate rate made up of the combination of the two local rates. To do this was to act within the law, and does not render the order sued on void. Neither did the form of order deprive the defendant of any right allowed by statute. While it is true that section 15, as above pointed out, provides that, in case of the

establishment of a joint rate by the Commission, it is to apportion such rate where the carriers fail to agree, and then by a supplemental order, that provision has no application here, for the Commission here established no joint rate, but expressly declined to do so. It simply in dealing with the interstate movement left one of the separately established rates where it found it and ordered that the second be reduced to conform to reason.

While this precise question has not perhaps been ruled on by the courts, the plain intimations from at least two decided cases are in support of the view here taken. One of the orders now involved was before the Commerce Court in Denver & R. G. Co. v. Interstate Commerce Commission, 195 Fed. 968. In that case the court says by way of recital of the facts:

"The shipments in question were hauled by the Missouri Pacific to Pueblo, and there delivered by that carrier without break of bulk to the Denver & Rio Grande, which completed the haul to Leadville. At the time these shipments moved, there was no joint rate of the two roads applying from St. Louis to Leadville, and the through charge was the local rate of the Missouri Pacific from St. Louis to Pueblo plus the local rate of petitioner from Pueblo to destination. In this connection it appears that petitioner has no joint rates with any of its Eastern connections at Pueblo, or other Colorado common points, on traffic moving to or from points in Colorado on its lines west of Pueblo and other Colorado common points."

Dealing with the validity of the order, the court says:

"The sixth section of the act recognizes three kinds or classes of rates, namely, the rates between different points on each carrier's line, the joint rates of two or more carriers when they have established through routes and joint rates, and the 'separately established rates' applied by a carrier on through traffic when there is a through route but no joint rate. This rate in question from Pueblo to Leadville seems to us clearly of the latter class. It is the rate which petitioner provided for through transportation, and it was that rate, provided and used for that purpose, of which complaint was made as resulting in an excessive through charge, and which the Commission by its order reduced. The circumstance that it was the same in amount as the purely local rate of petitioner between the same points does not alter its character as a separately established rate applicable to through shipments. In our opinion both the carrier and the traffic were within the terms of the act, and the Commission had full jurisdiction to make the order in question. See Interstate Com. Com. v. Chicago, R. I. & Pac. Ry., 218 U. S. 88, 30 Sup. Ct. 651, 54 L. Ed. 946, where the Supreme Court sustained an order of the Commission which reduced the local rates of certain carriers between the Mississippi and Missouri rivers when applied to through traffic from Eastern territory."

While it is true that the Commerce Court in deciding this case was dealing principally with the contention that the Denver & Rio Grande rate was purely an intrastate one and thus without the jurisdiction of the Commission, the decision, fully upholding, as it did, the very order now brought into question, is not without persuasive force.

The case referred to in the opinion just quoted—Interstate Com. Com. v. Chicago, R. I. & Pac. Ry. Co., 218 U. S. 88, 30 Sup. Ct. 651, 54 L. Ed. 946—is likewise instructive. In that case the Commission had dealt with through rates on freight from the Atlantic seaboard to Missouri river points. It was shown that the through rate was made up by adding together the rates from points of origin to the

Mississippi river crossings, and the local rates from the Mississippi crossings to the Missouri river cities. The Commission decided that the through rates were unreasonably high "because those portions of the through rates which apply between the Mississippi river crossings and the Missouri river cities are too high. These are defendants' 'separately established rates,' which are 'applied to the through transportation,' and, therefore, the through rates should be adjusted by reduction of those factors or parts thereof which are found to be unreasonable." The order of the Commission reduced the through rate by reducing the local rates from the Mississippi to the Missouri. Numerous objections were urged to the validity of this course, among others being the following:

"That the Commission only has power to establish, after hearing on complaint, through rates and joint rates and prescribe the just and reasonable proportions of such rates between the carriers only when they (the carriers) fail to agree upon the proportion or division thereof, and that there was no evidence that they had failed to agree upon such rates or the proportion and divisions thereof, and that, therefore, the order exceeds the power of the Commission and deprives the companies of their property without due process of law, in violation of the fifth amendment of the Constitution of the United States."

This objection it will be noted is very close to that made here. The Supreme Court, while not discussing specifically this objection, held that the order of the Commission was valid, and directed a dismissal of the proceeding designed to arrest its enforcement. For these reasons, we overrule the fourth ground of the demurrer.