DENVER & R. G. R. CO. v. INTERSTATE COMMERCE COMMISSION
(UNITED STATES, Intervener).

(Commerce Court, April 9, 1912.)

No. 35.

1. COMMERCE (§ 33*)—INTERSTATE COMMERCE ACT—CONSTRUCTION.

The proviso in Interstate Commerce Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), "that the provisions of this act shall not apply to the transportation of passengers or property * * * wholly within one state and not shipped to or from a foreign country from or to any state or territory as aforesaid," is not an exception of the intrastate carriage of interstate commerce from the operation in the act, while leaving the intrastate carriage of foreign commerce subject to its provisions, but is merely a disclaimer of the intention to include purely intrastate business over which Congress has no jurisdiction; and the exception therefrom of shipments to or from a foreign country is to avoid any possible conflict with the preceding clause, which makes such shipments subject to the act, although their carriage in this country to or from a port of transhipment or entry may be wholly within a single state.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 26, 81; Dec. Dig. § 33.*]

2. CARRIERS (§ 30*)—INTERSTATE COMMERCE COMMISSION—POWERS—RATES SUBJECT TO REGULATION—"THROUGH ROUTE."

The Missouri Pacific Railway Company received car loads of beer in St. Louis for transportation to Leadville, Colo., issuing receipts therefor showing contents, weight, destination, and consignee, and that the shipment was received subject to its uniform bill of lading, to be delivered to the consignee and routed over the line of the Denver & Rio Grande Rail-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

road Company. At Pueblo, Colo., it turned the cars over to the latter company, which moved them to Leadville on a local waybill, showing the consignor and consignee and the rate and charge of each company. The two companies had no established joint rate between St. Louis and Leadville, but they constantly exchanged traffic between such points; each charging its own local rate to and from Pueblo. The total freight was collected by one, either from the consignor or consignee, and daily settlements were made between them. *Held,* that such course of business was in fact the establishment of a "through route" between the two points, within the meaning of section 6 of the Interstate Commerce Act, as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (U. S. Comp. St. Supp. 1909, p. 1153), which requires the filing of schedules of the "separately established rates" applied by a carrier on through traffic, when there is a through route, but no joint rate, and that such rate established by the Denver Company was within the terms of the act, and as a part of the through charge was subject to regulation by the Interstate Commerce Commission under section 15 of the act as amended.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. § 30.*]

Petition by the Denver & Rio Grande Railroad Company against the Interstate Commerce Commission, in which the United States intervenes. On final hearing. Petition dismissed.

For opinion of Interstate Commerce Commission, see Baer Bros. Mercantile Co. v. Missouri Pac. Ry. Co., 17 Interst. Com. Com'n R. 225.

Joel F. Vaile (E. N. Clark and A. C. Campbell, on the brief), for petitioner.

P. J. Farrell, for Interstate Commerce Commission.

Blackburn Esterline, Special Asst. Atty. Gen. (Winfred T. Denison, Asst. Atty. Gen., on the brief), for the United States.

Before KNAPP, Presiding Judge, and ARCHBALD, HUNT, CARLAND, and MACK, Associate Judges.

KNAPP, Presiding Judge. This suit was brought to set aside an order of the Interstate Commerce Commission, dated November 26, 1909, which in effect required petitioner, the Denver & Rio Grande Railroad Company, to reduce its rate on beer in car loads, from Pueblo, Colo., to Leadville, Colo., when part of a through transportation from St. Louis, Mo., to Leadville, from 45 cents to 30 cents per 100 pounds.

The principal ground upon which the order of the Commission is claimed to be invalid, and the only one that needs to be discussed, is that the order relates to the transportation of property received, handled, transported, and delivered wholly within one state, which is said to be not within the jurisdiction of the Commission because of the first proviso in section 1 of the act to regulate commerce. It is conceded that the transportation in question was interstate commerce, because the traffic was carried by continuous movement from a point in one state to a point in another state, and was therefore subject to the regulating power of Congress: but the contention is made that

the proviso mentioned covers such transportation as is here involved, and therefore excludes it from the authority of the Commission. The facts upon which this contention is based appear to be as follows:

The Missouri Pacific Railway Company operates a line of railway from St. Louis to Pueblo, where it connects with a line of petitioner from Pueblo to Leadville and beyond. The rate affected by the order was applied to car-load shipments of beer which originated in St. Louis during the years 1907 and 1908, and were transported therefrom by railroad through Pueblo to Leadville. The shipments in question were hauled by the Missouri Pacific to Pueblo, and there delivered by that carrier without break of bulk to the Denver & Rio Grande, which completed the haul to Leadville. At the time these shipments moved, there was no joint rate of the two roads applying from St. Louis to Leadville, and the through charge was the local rate of the Missouri Pacific from St. Louis to Pueblo plus the local rate of petitioner from Pueblo to destination. In this connection it appears that petitioner had no joint rates with any of its Eastern connections at Pueblo, or other Colorado common points, on traffic moving to or from points in Colorado on its lines west of Pueblo and other Colorado common points, but was a party to joint tariffs on traffic moving between Eastern points and points west of Colorado—as, for example, Utah and transcontinental traffic.

The traffic in question was shipped by the William J. Lemp Brewing Company, of St. Louis, to the Baer Bros. Mercantile Company, of Leadville; the latter being the complainants at whose instance the rate in question was investigated and reduced by the Commission, and the transportation appears to have been conducted in the following manner:

Upon receiving a car load of beer at St. Louis, the Missouri Pacific issued to the consignor, the William J. Lemp Brewing Company, a receipt for the same, showing on its face that it was to be delivered to Baer Bros. Mercantile Company at Leadville, Colo., routed via the Denver & Rio Grande. This receipt described the articles shipped, with their aggregate weight, and bore a notation to the effect that the shipment was tendered and received subject to the company's uniform bill of lading. The car in which the shipment was loaded was then moved by the Missouri Pacific on a local waybill from St. Louis to Pueblo; such waybill showing Baer Bros. Mercantile Company as the consignee and Leadville as the destination, and containing a statement of the contents and weight of the car, with the freight charges of the Missouri Pacific computed on its local rate from St. Louis to Pueblo. Upon arrival at Pueblo the car was placed on the interchange track, where the Missouri Pacific and petitioner delivered car-load traffic to each other. The agent of the Missouri Pacific at Pueblo thereupon delivered to the agent of petitioner what is known as a "transfer sheet," which showed the consignor and point of origin, the contents and weight of the car, the freight charges of the Missouri Pacific to Pueblo, and also the consignee and destination of the shipment. The car was then taken from the interchange track by petitioner and

moved to Leadville on a local waybill, which likewise named the consignor, and showed the consignee and destination, description of contents, the rate and charges to Pueblo, and the rate and charges of petitioner from Pueblo to Leadville. If the shipment were prepaid to destination, as generally seems to have been the case, the Missouri Pacific paid petitioner the amount of its charges from Pueblo to Leadville; if not prepaid, petitioner paid the Missouri Pacific the charges of that carrier to Pueblo, and collected the entire charges from consignee at destination, such payments between the two roads being made in daily settlements. In either case the physical movement and handling of the car was precisely the same as would be the case under a joint rate and through bill of lading. The movement was continuous from origin to destination, without the intervention of the consignor or consignee, and so far as they were concerned the transportation was like that over a single line. In control and management, and in fixing their respective local rates upon which these shipments moved, the Missouri Pacific and petitioner were entirely independent of each other, and there was no agreement or arrangement between them for through transportation from points on one line to points on the other, except such as is indicated by or may be implied from the manner in which such business was handled and their mutual dealings with respect thereto, as above described.

[1] Upon these facts, as stated above, it is contended with much earnestness that petitioner was a purely local carrier within a single state of the traffic in question, and therefore as to such traffic not subject to the jurisdiction of the Commission because of the proviso in section 1 (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), which reads as follows:

"Provided, however, that the provisions of this act shall not apply to the transportation of passengers or property, or to the receiving, delivering, storage, or handling of property wholly within one state and not shipped to or from a foreign country from or to any state or territory as aforesaid. * * *"

Briefly stated, the argument of petitioner's counsel is this: That section 1 of the act defines the classes of carriers subject to its provisions; that it might be plausibly contended that the proviso aimed to exclude only their strictly intrastate business, but that this construction is inadmissible because of the concluding phrase, "and not shipped to or from a foreign country from or to any state or territory as aforesaid," that is to say, because intrastate business destined to or coming from a foreign country is not excluded; and that therefore it follows that, as there may be foreign business handled wholly in one state and not excluded, so there may be interstate business handled wholly in one state which is excluded.

But it would also follow that the Congress, in devising a system of railway regulation, took care to include the intrastate carriage of *foreign* commerce—comparitively small in amount—and yet purposely exempted the intrastate carriage of *interstate* commerce, which aggregates a very large volume. Only the plainest language would im-

pute to the lawmaking body such an inconsistent and irrational intention. It seems clear to us that the language in question should not be so construed, and we reject the contention of petitioner, because, in our judgment, it is based upon an erroneous hypothesis.

Section 1 not only subjects to the act, first, certain carriers, but also, second, certain transportation. The proviso relates, not to the carriers, but to the transportation, and is therefore to be read in connection with the second clause of the section, and not with the first. Summarized, the first clause relates to carriers engaged in transportation (a) wholly by rail, or (b) partly by rail and partly by water under a common arrangement, from (c) state to state, or (d) from the United States to or through an adjacent foreign country. For example, carriers transporting traffic by rail from Albany to New York for shipment to Europe would not come under this definition, whether or not there were a common arrangement for rail and water transportation; but carriers engaged in moving traffic from Albany to New York by rail and thence by water to New Orleans, or from Albany to Buffalo by rail and thence by water to Toronto, would come within the definition, if there were a common arrangement. It was interstate rail transportation that was primarily sought to be regulated, not interstate water transportation, and not the rail part, within a single state, of rail and water interstate transportation, unless the rail carrier and the water carrier were under a common control management or arrangement.

But as to transportation to a foreign country, unless wholly by water from point of origin to final destination, Congress had a different and definite purpose. Even though in that case there were no common arrangement between the rail and water carrier, even though no regulation of the ocean carrier or the entirely independent lake or river carrier was intended, nevertheless Congress deemed it important to subject to the act, and therefore by the second clause did subject, that part of such transportation which was conducted within this country, although confined to a single state and conducted by a line that had no connection of any kind with an ocean carrier or with any interstate traffic. Then, out of abundant caution, as it seems, and by way of disclaimer of any authority over a carrier that confined its business to one state, and was not engaged in such interstate business as would bring it within the first clause, the proviso was added. The intended effect of this proviso was to exclude from the operation of the act such transportation, whether of persons or property, as was carried on wholly within *one* state, other than that going to or coming from a foreign country. Having given jurisdiction over certain transportation that could be conducted either in more than one or in only one state—that is, the inland transportation of commerce to or from foreign lands—it disclaimed jurisdiction over domestic traffic confined strictly and wholly to a single state. This disclaimer naturally contained the limiting clause, "not shipped to or from a foreign country," to avoid any possible conflict with what immediately preceded, and to prevent an interpretation which would exclude the Albany-New York part of the Albany-New York-Europe transportation in the example

above given. · The proviso, therefore, must be regarded as a disclaimer, and not as an exception. It could not, of course, be an exception to the second grant of jurisdiction over certain transportation, and it does not in any way refer to the first grant of jurisdiction over certain carriers, either by way of disclaimer or by way of exception. It results that rail carriers engaged in such transportation of admittedly interstate commerce as is here considered were intended to be made subject to the act and are included in the classes of carriers to which the act applies.

This construction gives consistent and appropriate meaning to those provisions of the first section which define the scope and application of the entire enactment. It sustains the act as a comprehensive scheme of regulation designed to include all interstate transportation wholly by railroad, or partly by railroad and partly by water when both are used under a common arrangement, and to exempt only that intrastate transportation which is not within the power of Congress to regulate. As was said by the Supreme Court in Texas & Pacific Railway v. Interstate Com. Com., 162 U. S. 212, 16 Sup. Ct. 672, 40 L. Ed. 940:

"It would be difficult to use language more unmistakably signifying that Congress had in view the whole field of commerce (excepting commerce wholly within a state), as well that between the states and territories as that going to or coming from foreign countries."

[2] Moreover, it seems plain to us upon the undisputed showing in this case that these carriers, as is now their duty under the amended act, have in fact established through routes from points on one road to points on the other, or at least between St. Louis and Leadville. Their physical connection at Pueblo by means of interchange tracks and otherwise, their constant acceptance of car-load traffic from each other, their daily settlement of charges on such interchange traffic, and their habitual course of dealing with each other in the handling and transfer of through shipments, have brought about, in our opinion, those mutual relations which characterize through routes. Indeed, it is not perceived that their customary conduct of such business leaves anything to be done—and nothing was suggested in answer to inquiry on the argument of the case as to what could be done—to create the conditions which constitute through routes. Apparently they are doing for and with each other in respect of through traffic practically everything that the Commission could require under its present power to establish through routes where connecting carriers have failed or neglected to provide such facilities.

The sixth section of the act recognizes three kinds or classes of rates, namely, the rates between different points on each carrier's line, the joint rates of two or more carriers when they have established through routes and joint rates, and the "separately established rates" applied by a carrier on through traffic when there is a through route but no joint rate. This rate in question from Pueblo to Leadville seems to us clearly of the latter class. It is the rate which petitioner provided for through transportation, and it was that rate, provided and used for that purpose, of which complaint was made as resulting in an

excessive through charge, and which the Commission by its order reduced. The circumstance that it was the same in amount as the purely local rate of petitioner between the same points does not alter its character as a separately established rate applicable to through shipments. In our opinion both the carrier and the traffic were within the terms of the act, and the Commission had full jurisdiction to make the order in question. See Interstate Com. Com. v. Chicago, R. I. & Pac. Ry., 218 U. S. 88, 30 Sup. Ct. 651, 54 L. Ed. 946, where the Supreme Court sustained an order of the Commission which reduced the local rates of certain carriers between the Mississippi and Missouri rivers when applied to through traffic from Eastern territory.

We do not say that a carrier located wholly within a state may not so conduct its business as to be in fact and in law a purely intrastate carrier, nor do we attempt to point out what such a carrier must do or not do to escape regulation under the act. It is sufficient to hold that the petitioner in this case, upon the undisputed and conceded facts, is subject to the provisions of the regulating statute as to the traffic and transportation here in question; and it follows, since no other ground of relief is presented by the record, that the petition should be dismissed, and it will be so ordered.