286    APPELLATE COURTS OF ILLINOIS.

Macomber & Whyte Rope Co. v. United Fruit Co., 225 Ill. App. 286.

# Macomber & Whyte Rope Company, Appellee, v. United Fruit Company, Appellant.

## Gen. No. 26,939.

1. CARRIERS—*shipments to which Uniform Bill of Lading Act applies*. The Uniform Bill of Lading Act passed by Congress as an amendment to the Interstate Commerce Act (39 Stat. L. 441, Comp. Stat. 1918, sec. 8604a) does not apply to a shipment from a State to the Panama Canal Zone, as such latter territory cannot be considered territory of the United States.

2. UNITED STATES—*status of Panama Canal Zone as foreign country*. The Panama Canal Zone is treated by the laws of the United States as a foreign country, except that the act as to extradition of persons accused of crime (37 Stat. L. 569, Comp. Stat. 1918, sec. 10047) is to be considered in force in the Canal Zone, which shall be treated as a territory of the United States for such purposes "and such purposes only."

3. CARRIERS—*applicability of Interstate Commerce Act to shipments to Canal Zone*. Under the provision of the Interstate Commerce Act to the effect that it applies to the transportation of property "shipped from any place in the United States to a foreign country, and carried from such place to a port of trans-shipment," the shipment is subject to the Interstate Commerce Act in transit from the State of shipment to the port of the United States, but the statute would not apply when the goods are shipped from the port to the foreign country.

4. CARRIERS—*inapplicability of Interstate Commerce Act to shipments to Canal Zone by carriers not under common control*. A shipment of goods from a State to the Panama Canal Zone cannot be considered subject to the terms of the Interstate Commerce Act, even though the Panama Canal Zone is considered territory of the United States, when the water and rail transportation are not shown to be under a "common control," as the mere fact that a railroad and a vessel form a continuous line of transportation, the one taking up the goods delivered by the other at its terminus, and carrying them thence to their destination, does not bring the two carriers under the Interstate Commerce Act.

5. CARRIERS—*when shipper cannot attack stipulations of bill of lading*. A shipper of goods to the Panama Canal Zone, who does not seek to hold the initial carrier liable for loss of the goods, but brings an action against the steamship company which accepted the goods at a port, basing its claim on the bill of lading issued by the defendant at the port, cannot claim that it is bound only

Macomber & Whyte Rope Co. v. United Fruit Co., 225 Ill. App. 286.

by the terms of the original bill of lading issued by the initial carrier, and that the issuance of another bill of lading by the defendant was of no effect.

6. CARRIERS—*invalidity of stipulation against liability for negligence.* A common carrier cannot exempt itself from liability for its own negligence or that of its servants.

7. CARRIERS—*provisions of Harter Act against limitation of liability for negligence declaratory of common law.* The Harter Act of February 13, 1893 (U. S. Stat., vol. 27, p. 445), which forbids any carrier by water, transporting merchandise from any port of the United States, to relieve itself, by contract, from liability for loss or damage arising from negligence, is merely declaratory of the common law.

8. CARRIERS—*binding effect of stipulation in bill of lading fixing amount of liability.* A shipper of a reel of wire rope under a bill of lading fixing the value of the shipment at not to exceed $100, and providing that the carrier will not be liable for more than that amount in case of loss or damage resulting from negligence, cannot contend that the bill of lading is not binding under the rule that a carrier cannot exempt itself from liability for negligence, and that consequently the carrier is liable for the full value of the rope which was lost, a sum in the vicinity of $400, when the plaintiff's statement of claim for breach of contract does not allege loss of the goods by negligence, or indicate such contention, and in such case the shipper is bound by the terms of the bill of lading, which does not release ·the shipper from liability for negligence, but merely fixes the subject-matter of the contract and specifies its value.

9. CARRIERS—*statutes governing shipment of goods made outside of the State.* The statutes of this State do not apply to a shipment of goods and a contract for carriage when made outside the State.

10. CARRIERS—*when bill of lading fixing valuation is valid.* A provision in a bill of lading fixing the valuation of goods shipped and providing for given freight charges on such valuation and for an increased charge in case the goods are of a higher valuation, and providing further that unless such higher valuation is declared or indicated the goods shipped shall be considered of a valuation not to exceed that stipulated in the bill of lading and that, in case of loss or damage, the liability of the carrier shall not be greater than that amount, is a valid contract at common law, and when a shipper tenders goods for transportation and receives such a bill of lading and pays the freight charges based on the valuation stipulated in the bill; nothing being said as to a higher valuation, the limit of recovery by the shipper in case of

loss or damage will be the value indicated in the bill of lading, in any case where the carrier is subject to common-law liability.

11.   CARRIERS—*connecting carrier as shipper's agent.*  A connecting carrier is the agent of the shipper for the purpose of arranging the contract for further shipment, and the shipper is bound by the acts of such connecting carrier, when it appears that the goods are delivered to an initial carrier with freight prepaid to a port of transshipment, it being clear at the time of shipment that a new bill of lading would have to be issued at the port to the point of ultimate destination, and the fact of agency is further established in such case when the shipper remits the charges direct to the steamship company which accepted the goods from the connecting carrier.

Appeal from the Municipal Court of Chicago; the Hon. JOHN RICHARDSON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed. Opinion filed May 17, 1922.

MILLER, STARR, BROWN, PACKARD & PECKHAM, for appellant; GEORGE PACKARD and DON C. WRAY, of counsel.

W. W. HOOVER, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant, United Fruit Company, a transportation company running a line of steamers between New Orleans and the Panama Canal Zone, seeks to reverse a judgment for $343.44, recovered by the plaintiff, Macomber & Whyte Rope Company, in the municipal court of Chicago. The trial was had without a jury, the parties stipulating as to the facts and submitting to the court the issue of law as to the extent of the defendant's liability.

The stipulated facts disclose that on October 10, 1918, the plaintiff delivered a reel of wire rope, of the invoice value of $443.44, to the Chicago & Northwestern Railroad, at Kenosha, Wisconsin, consigned to the "Panama Canal," at the "Isthmus of Panama," freight to be prepaid. Freight charges were paid by

the plaintiff to that railroad, covering the shipment from Kenosha to New Orleans. The rope was delivered by the Chicago & Northwestern Railroad to the Illinois Central Railroad, and by the latter transported to New Orleans, where it was delivered to the defendant, United Fruit Company, on December 3, 1918, the latter company issuing its bill of lading therefor. The rope was never delivered to the consignee and the plaintiff never received payment therefor.

The published tariff of the defendant, in force and effect at the time in question, contained an item known as Item 13, which provided that on all packages of merchandise of a value of more than $100, and so declared on shipping receipts, there would be a charge of $1\frac{1}{2}$ per cent in addition to the published rates and that valuation must appear on the bill of lading. It was further set forth in this item that the defendant company would not be liable in the event of either loss or damage resulting from fault or negligence, as detailed on bills of lading, for more than $100 per package, unless the excess valuation was shown on shipping receipts and bills of lading, and the extra freight paid thereon. There was a further item known as Item 22, providing that freight on shipments from New Orleans, consigned to the Panama Canal, would be assessed at rates published in the defendant's tariff, less 25 per cent, with a minimum of $17\frac{1}{2}$ cents per hundred pounds, with certain exceptions not involved here. At the time the defendant issued its bill of lading, the Illinois Central Railroad filled out a dock receipt, upon which was printed a paragraph providing that if the value of any goods exceeded $100 per package, a rate of freight based thereon must be arranged before tender of the goods for shipment, and the value of the goods must be declared on delivering them to the defendant at the dock, and such value inserted in the dock receipt, failing which, the

.goods would be conclusively deemed received subject to the bill of lading limitation of value and liability to the invoice cost, not to exceed $100 per package. No declaration as to value was made at the time the rope in question was delivered to the defendant company, and no figures as to its value were inserted in the dock receipt. The bill of lading issued by the defendant company to the plaintiff, covering the shipment of the rope from New Orleans to the Panama Canal, showed that the rate of freight charged was 17½ cents per hundred pounds. This bill of lading contained an item known as Item 30, which provided that in accepting the bill of lading, the shipper, owner and consignee of the goods, and the holder of the bill of lading, agreed to be bound by its provisions, either on its face or on the reverse side, as fully as if they had signed them. On the reverse side of the bill of lading, as a part of the contract of shipment, there appeared a provision to the effect that unless a higher value was stated in the bill of lading, the value of the goods did not exceed $100 per package, and that the freight on the shipment had been adjusted on that valuation, and no oral declaration or agreement should be evidence of a different valuation; and that in computing any liability to the carrier in respect of the goods shipped, no value should be placed thereon higher than the invoice cost, not exceeding $100 per package, or such other value as might be stated in the bill of lading. The freight charges based on a rate of 17½ cents per hundred pounds, amounting to $7.24, were paid by the plaintiff to the defendant. In June, 1920, the plaintiff wrote the defendant, declining to accept a payment of $100 on its claim for $443.44. In view of the fact that the defendant gave no definite reason for the loss of the rope, the plaintiff expressed the belief that it could not account for the loss of such a bulky article unless it was due to the carrier's gross negligence. The plaintiff added in this letter that it was aware of the

limited liability of ocean carriers, but felt that a shortage of material of this size was an indication of pure negligence. Prior to the commencement of this suit, the defendant tendered the plaintiff $100 in full payment of its liability under its bill of lading, which amount was retained by the plaintiff without prejudice to its right to insist upon further payment. The stipulation of the parties concluded with the statement that it was their intention to place before the court for decision, the sole question as to whether the amount of damages which the plaintiff was entitled to recover from the defendant was the amount of $100, or whether it was the full invoice value of the rope, amounting to $443.44.

It should be noted that the plaintiff's statement of claim alleges that its claim is for the breach of a certain contract, entered into by the plaintiff and the defendant at New Orleans on December 3, 1918, under the terms of which the defendant undertook and agreed to carry the rope in question from New Orleans to Cristobal, Canal Zone, Panama. It was therein further alleged that the defendant had made default and failed to deliver safely the rope to consignee at destination, and that the shipment was never delivered at the point of destination or at any other point, whereby, the plaintiff claimed damages in the sum of $443.44.

There were certain propositions of law requested by the defendant and refused by the court, which action of the trial court is assigned as error. The court found the issues for the plaintiff and assessed the plaintiff's damages at the sum of $343.44, being the full invoice value of the rope in question, less the $100 which had been paid by the defendant to the plaintiff prior to the bringing of the suit.

The question of the defendant's liability depends on the validity of the provisions of its bill of lading, limiting the value of the goods shipped, to $100, in the

292      APPELLATE COURTS OF ILLINOIS.

Macomber & Whyte Rope Co. v. United Fruit Co., 225 Ill. App. 286.

absence of any declaration on the part of the plaintiff fixing the value at a larger amount. The determination of this question involves the further question as to whether the liability of the defendant is covered by the terms of the Interstate Commerce Act. We have come to the conclusion that the defendant's liability is not covered by the terms of that act, and that the provisions referred to in the defendant's bill of lading are valid.

The Uniform Bill of Lading Act passed by Congress on August 9, 1916, as an amendment to the Interstate Commerce Act (39 Stat. L. 441, Comp. Stat. 1918, sec. 8604a), provides that any common carrier, "subject to the provisions of this Act," receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State or Territory or the District of Columbia, or from any point in the United States to a point in an adjacent foreign country, should issue a bill of lading therefor, and that the carrier would be liable to the holder of the bill of lading for any loss or damage to such property caused by such carrier, or by any other common carrier, to which property may be delivered or over whose lines such property may pass within the United States or an adjacent foreign country, when transported on a through bill of lading; and this act further provides that no contract or limitation of any kind should exempt such common carrier from the liability thereby imposed, but that such carrier should be liable to the holder of the bill of lading for the full actual loss or damage caused by the carrier to such property or caused by the connecting carrier, notwithstanding any limitation of liability or any representation or agreement as to value stipulated in the bill of lading, or in any contract, rule, regulation, or any tariff filed with the Interstate Commerce Commission; and the act further provides that any such limitation is unlawful and void.

This Act of Congress could not cover the shipment involved here unless the Canal Zone is to be considered as a territory of the United States. In our opinion, it cannot be so considered and therefore the act did not apply.

By an Act of Congress passed August 24, 1912 (37 Stat. L. 569, Comp. Stat. 1918, sec. 10047), it is provided that all laws and treaties relating to the extradition of persons accused of crime in force in the United States, and all laws relating to the rendition of fugitives from justice, as between the several States and Territories of the United States shall extend to and be considered in force in the Canal Zone, and for such purposes "and such purposes only" the Canal Zone shall be considered and treated as an organized Territory of the United States. Except for these purposes, the Canal Zone is treated by the laws of the United States as a foreign country. The Act of Congress of March 2, 1905 (33 Stat. L. 843, Comp. Stat. 1918, sec. 5323) provides that all laws affecting imports of articles, goods, wares and merchandise and entry of persons into the United States from foreign countries shall apply to articles, goods, wares and merchandise and persons coming from the Canal Zone and seeking entry into the United States.

It is claimed by the plaintiff, however, that even though it be considered that the Canal Zone is not a territory of the United States, nevertheless, the Interstate Commerce Act controls in this case, because it specifically provides that where a shipment is transported from any place in the United States to a foreign country, the provisions of the act shall apply. In our opinion, this does not accurately state the law. The Interstate Commerce Act provides that it shall apply, among other situations, to the transportation of property, "shipped from any place in the United States to a foreign country, and carried from such place to a port of trans-shipment, or shipped from a

foreign country to any place in the United States and carried to such place from the port of entry  *  *  *." It would seem to be clear that this provision of the Interstate Commerce Act would not apply to the transportation of property shipped from any place in the United States to a foreign country, where such shipment did not involve a carrying from the place of shipment to a port of trans-shipment. For example, the provisions of the act would not apply to a shipment of property from New York to Liverpool, but it would apply to a shipment from Chicago to Liverpool. It would seem to follow that in neither case, in the illustration, would the provisions of the Interstate Commerce Act apply to the shipment while in transit from New York to Liverpool, but, in the latter case in the illustration, they would apply to the shipment while in transit between Chicago and New York and up to the point of delivery to the ocean carrier. That this is the correct interpretation of the act is indicated by what the court said in *Denver & R. G. Ry. Co. v. Interstate Commerce Commission,* 195 Fed. 968, in which case the court had occasion to construe the Act to Regulate Commerce, passed by Congress February 4, 1887 (U. S. Comp. Stat. 1901, page 3154), which contains the same language as above quoted from the Interstate Commerce Act of June 29, 1906, relied upon by the plaintiff in the case at bar. In the case cited, in referring to transportation to a foreign country, and the apparent purpose of Congress in putting into the act the language quoted, the court points out that Congress deemed it important to subject to the act "that part of such transportation which was conducted within this country, although confined to a single State and conducted by a line that had no connection of any kind with the ocean carrier or with any interstate traffic," Congress taking the precaution to add a proviso to the effect that the provisions of the act should not apply to transportation of property

Macomber & Whyte Rope Co. v. United Fruit Co., 225 Ill. App. 286.

wholly within a State where it was not shipped to or from a foreign country. It would seem to follow that the shipment in the case at bar was subject to the terms of the Interstate Commerce Act in transit from Kenosha, Wisconsin, to New Orleans, but that in the hands of the defendant, United Fruit Company, it was not subject to the terms of the Interstate Commerce Act.

Even if the Canal Zone were to be considered as a Territory of the United States, as contended by the plaintiff, it is our opinion that the shipment of the rope in question would not be subject to the terms of the Interstate Commerce Act, because it is not shown by the facts stipulated that the water transportation and the rail transportation preceding that water transportation were under a "common control." The provisions of the act, as relied upon by the plaintiff, are to the effect that they should apply to any corporation engaged in transportation or to any carrier where the carriage involved is wholly by railroad or partly by railroad and partly by water, "when both are used under a common control, management or arrangement for a continuous carriage or shipment." The only facts on this point, as stipulated to, are to the effect that the plaintiff delivered the rope in question to the Chicago & Northwestern Railroad Company at Kenosha, Wisconsin, for transportation to the Panama Canal via the Chicago & Northwestern Railroad, the Illinois Central Railroad and the United Fruit Company. The bill of lading received by the plaintiff at Kenosha recited that the freight was to be prepaid, and it was stipulated that the plaintiff did prepay the freight, but to New Orleans only, and it is further stipulated that the Illinois Central Railroad turned the rope over to the defendant, which then issued its bill of lading, calling for a specified freight charge covering the shipment from New Orleans to the Panama Canal Zone, which

296    APPELLATE COURTS OF ILLINOIS.

Macomber & Whyte Rope Co. v. United Fruit Co., 225 Ill. App. 286.

charge was duly paid by the plaintiff to the defendant. These facts in no way indicate that the shipment by railroad and then by water were "under a common control, management or arrangement for a continuous carriage or shipment." In construing this language, in *Ex parte Koehler*, 30 Fed. 867, the court said that the mere fact that a railroad and a vessel form a continuous line of transportation between two States, the one taking up the goods delivered by the other at its terminus, and carrying them thence to their destination, does not bring the two carriers under the Interstate Commerce Act. The court further says: "So long as a railway and a steamer are each operated under a separate and distinct control, each making its own rates, and only liable for the carriage and safe delivery of the goods at the end of its own route, the act does not apply to the transaction. To make these carriers subject to the act, the railway and vessel must, as therein provided, be operated or used under a 'common control'—a control to which each is alike subject, and by which rates are prescribed and bills of lading given for the carriage of goods over both routes as one." Clearly this was not the situation in the case at bar.

The plaintiff, arguing in its brief that the shipment in question, in the hands of the defendant, was controlled by the terms of the Interstate Commerce Act, proceeds to contend that the bill of lading issued by the Chicago & Northwestern Railroad at Kenosha, Wisconsin, on October 10, 1918, was the only instrument defining the rights, duties and liabilities of the parties thereto from the point of origin, at Kenosha, Wisconsin, to the Canal Zone; that this was a through bill of lading, because the Interstate Commerce Act makes it obligatory upon the carrier first receiving the shipment in interstate commerce to issue a bill of lading and makes that carrier liable on that bill of lading from the point of origin to destination. It is further

contended that this bill of lading issued by the Chicago
& Northwestern Railroad at Kenosha does not contain
any limitation of liability, and, therefore, the defend-
ant cannot seek to escape liability for the full value
of the goods shipped by issuing another bill of lading
containing conditions of limitations of liability as to
value, and that the attempt by the defendant to issue
a new bill of lading should be considered as of no ef-
fect.   We have already set forth the reasons leading
us to the conclusion that the shipment of rope in ques-
tion, in the hands of the defendant, was not within the
terms of the Interstate Commerce Act.   Further, it
should be pointed out that the plaintiff, itself, did not
proceed in this case on that theory.   It did not seek
to hold either the initial carrier or the defendant li-
able under the bill of lading received from the Chi-
cago & Northwestern Railroad Company, but it
brought this action against the defendant, basing its
claims on the bill of lading issued by the defendant at
New Orleans, and claiming that the defendant was li-
able for the loss of the rope under the terms of that
bill of lading and that its liability was for the full
value of the rope, notwithstanding the provisions in
that bill of lading, whereby the defendant sought to
fix a limit of value on the rope of $100.

The plaintiff further contends that even if it be
held that the Canal Zone is not a Territory of the
United States and that the bill of lading issued by the
Chicago & Northwestern Railroad was not a through
bill of lading, and its terms were not binding on the
defendant and that the defendant and its transporta-
tion of the rope in question do not come under the
terms of the Interstate Commerce Act, nevertheless,
the defendant is liable for the full value of the rope,
inasmuch as the Harter Act of February 13, 1893 (U.
S. Stat., vol. 27, p. 445) forbids any carrier by water,
transporting merchandise from any port of the United
States, to relieve itself, by contract, from liability for

loss or damage arising from negligence. That a common carrier cannot exempt himself from liability for his own negligence or that of his servants is elementary. *York Mfg. Co. v. Illinois Cent. Ry. Co.,* 3 Wall. (U. S.) 107; *New York Cent. R. Co. v. Lockwood,* 17 Wall. (U. S.) 357; *Bank of Kentucky v. Adams Exp. Co.,* 93 U. S. 174; *Hart v. Pennsylvania R. Co.,* 112 U. S. 331. This was the rule at common law and, therefore, the Harter Act is, in that respect, merely declaratory of the common law. However, the contention of the plaintiff, just referred to, is untenable for two reasons: First, its statement of claim does not allege that the loss of the rope in question was occasioned by the defendant's negligence, nor does it indicate in any way that plaintiff makes any such contention. For all that appears in this record, the rope may have been lost without any negligence whatever on the part of the defendant or its servants. Second, the contract involved in this case was not one by which the defendant is relieved from loss or damage arising from negligence. By the provisions in question, contained in the defendant's bill of lading, the value of the shipment involved is fixed at not to exceed $100, and it is provided that in case of loss or damage resulting from the negligence of the defendant, the company will not be liable for more than that amount. In *Adams Exp. Co. v. Croninger,* 226 U. S. 491, there was involved a bill of lading which provided that in consideration of the rate charged for carrying the shipment covered by the bill of lading, this rate being regulated by the value of the shipment and based upon a valuation of not exceeding $50, unless a greater value was declared, the shipper agreed that the value was not more than $50 unless a greater value was declared, "and that the company shall not be liable in any event for more than the value so stated." In the course of its opinion in that case the court said: "The statutory liability, aside from responsibility for the default of a connect-

ing carrier in the route, is not beyond the liability imposed by the common law, as that body of law applicable to carriers has been interpreted by this court as well as many courts of the States. *Greenwald v. Barrett*, 199 N. Y. 170; *Bernard v. Adams Exp. Co.*, 205 Mass. 254. The exemption forbidden is, as stated in the case last cited, 'a statutory declaration that a contract of exemption from ·liability for negligence is against public policy and void.' This is no more than this court, as well as other courts administering the same general common law, have many times declared. In the same case, just such a stipulation as here involved was upheld, the court saying (p. 259): 'But such a contract as we are considering in this case is not an exemption from liability for negligence in the management of property, within the meaning of the statute. It is a contract as to what the property is, in reference to its value. The purpose of it is not to change the nature of the undertaking of the common carrier, or limit his obligation in the care and management of that which is intrusted to him. It is to describe and define the subject-matter of the contract, so far as the parties care to define it, for the purpose of showing of what value that is which comes into the carrier's possession, and for which he must account in the performance of his duty as a carrier. It is not in any proper sense a contract exempting him from liability for the loss, damage, or injury to the property, as the shipper describes it in stating its value for the purpose of determining for what the carrier shall be accountable upon his undertaking, and what price the shipper shall pay for the service and for the risk of loss which the carrier assumes.' ''

In the case of *Kansas City Southern Ry. Co. v. Carl*, 227 U. S. 639, there was involved a bill of lading in which the consignor released the transportation company ''from all liability for any loss or damage said property may sustain in excess of $5 per hundred

300 APPELLATE COURTS OF ILLINOIS.

Macomber & Whyte Rope Co. v. United Fruit Co., 225 Ill. App. 286.

pounds.'' The evidence showed that the consignor delivered to the carrier two boxes and a barrel, containing the goods which were the subject of the shipment involved, but that the carrier delivered only one of the boxes and the barrel and that the value of the boxes lost was $75; that there were two rates in effect upon the character of goods making up this shipment, one based upon a released valuation of $5 per hundred pounds, and a higher rate upon such articles as were not so released, the latter rate being 75 cents per hundred pounds higher than the released valuation rate. In considering the question of whether the feature of the bill of lading referred to involved a contract for exemption from liability for negligence and was therefore not valid, the court, in holding that it did not involve such a contract, said: "An agreement to release such a carrier for part of a loss due to negligence is no more valid than one whereby there is complete exemption. Neither is such a contract any more valid because it rests upon a consideration than if it was without consideration. A declared value by the shipper for the purpose of determining the applicable rate, when rates are based upon valuation, is not an exemption from any part of its (the carrier's) statutory or common-law liability. The right of the carrier to base rates upon value has been always regarded as just and reasonable. The principle that the compensation should bear a reasonable relation to the risk and responsibility assumed is the settled rule of the common law." It was argued in that case that the contract there involved was not one of valuation, for by its terms it released the carrier, "from all liability for any loss or damage said property may sustain in excess of $5 per hundred pounds." The contention was that the phrase "hereby releases" indicated not a valuation but a release from liability for a part of the value. The court in holding the contrary observed that it was apparent that the con-

signor and the carrier had mutually understood that the boxes and barrel, offered for shipment, contained goods of the average value of $5 per hundred pounds and that the former must be presumed to have known that he was obtaining a rate based upon that valuation and that, therefore, this valuation was conclusive as against him.

The contract involved in the case at bar, as set forth in the bill of lading, on which the plaintiff bases his action, fixed the value of the reel of wire rope, making up the consignment which was lost, at not to exceed $100, and provided in effect that in case of loss of the consignment or damage to it, the liability of the defendant should not be for more than that amount, even though the loss or damage resulted from the defendant's negligence. As stated above, the facts presented in this case do not involve the question of negligence, but even if they did, for the reasons set forth in the authorities referred to, the contract, nevertheless, would not be void as one releasing the carrier from liability for negligence, it being a contract merely fixing the subject-matter of the contract between the plaintiff and the defendant, and specifying its value. ·

The consignment involved in the case at bar, having been received by the defendant carrier and the contract for its carriage, as set forth in the bill of lading, having been made outside of this State, such statutes as there may be in Illinois, covering the questions involved, do not apply. *Ellison v. Adams Exp. Co.*, 245 Ill. 410. The transportation in question not being under the Interstate Commerce Act, the question is, whether the contract contained in the bill of lading is valid at common law. In our opinion, a provision in a bill of lading, fixing the valuation of goods shipped and providing for given freight charges on such valuation, and for an increased charge in case the goods are of a higher valuation, and pro-

302    Appellate Courts of Illinois.

Macomber & Whyte Rope Co. v. United Fruit Co., 225 Ill. App. 286.

viding further that unless such higher valuation is declared or indicated, the goods shipped shall be considered of a value not to exceed that stipulated in the bill of lading and that, in case of loss or damage, the liability of the carrier shall not be greater than that amount, is a valid contract at common law, and where a shipper tenders goods for transportation and receives such a bill of lading and pays the freight charges based on the valuation stipulated in the bill, nothing being said as to any higher valuation, the limit of the recovery of the shipper against the carrier in case of loss or damage will be the valuation thus indicated in the bill of lading, in any case where the carrier is subject to a common-law liability. In the case of *Adams Exp. Co. v. Croninger,* 226 U. S. 491, referred to above, the court, after making certain observations as to the common-law liability of a carrier, said that such liability ''might be modified through any fair, reasonable and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servants. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations and the right to agree upon a rate proportionate to the value of the property transported. It has, therefore, become an established rule of the common law, as declared by this court in many cases, that such a carrier may, by a fair, open, just and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value, made for the purpose of obtaining the lower of two or more rates of charges proportionate to the amount of the risk.''

In the case of *Kansas City Southern Ry. Co. v. Carl,* 227 U. S. 639, also referred to above, the court held that the provisions of the Interstate Commerce Act do not forbid a limitation of liability, in case

of loss or damage, to a valuation agreed upon for the purpose of determining which of two alternative lawful rates shall apply to a particular shipment. And, furthermore, that when a shipper delivers a package to be shipped and declares a value, either upon request or voluntarily, and the carrier makes a rate accordingly, the shipper is estopped upon plain principles of justice from recovering, in case of loss or damage, any greater amount.

In *Hohl v. Norddeutscher Lloyd,* 175 Fed. 544, which was decided by the United States Circuit Court of Appeals subsequent to the passage of the Harter Act, above referred to, there was involved the question of whether it was competent for an ocean carrier of goods to limit its liability in case of loss, even as against its own negligence, by a provision in its bill of lading that it would not be accountable ''for any sum exceeding $100 per package for goods of whatever description  *  *  *  unless the value of such be herein expressed and freight as may be agreed paid thereon,'' where such valuation is the basis on which freight was charged and was fully known to the shipper. In deciding that question in the affirmative, the court said: ''The carrier assumes liability for the amount named upon agreement to pay the freight specified, and accords to the shipper the right to have his goods carried and accounted for at their full value, provided he will set that value in advance and agree to pay freight at a rate proportionate thereto. Such an agreement is fair and reasonable, because it enables the carrier to ascertain in advance what risk of loss he runs in undertaking the transportation, so that, if he chooses to do so, he can protect himself by effecting a certain amount of insurance and also by exercising greater care in handling the more valuable packages.''

It is contended by the plaintiff that these authorities being cases arising under the Interstate Com-

merce Act, are not applicable to the case at bar, if it be held, as it is, that the shipment involved is not subject to the terms of the Interstate Commerce Act. With that contention we do not agree, for the rulings of the courts involved in the cases cited have reference to such provisions of the Interstate Commerce Act as are declaratory of the common law, and, therefore, they are wholly applicable in this case, where the liability of the defendant is a common-law liability.

In connection with its argument, the plaintiff has called our attention to a number of cases which, in our opinion, are not in point, as they are cases in which there were involved bills of lading wherein the carriers sought to relieve themselves from all liability, and in which there is not involved any question of any agreed valuation of the consignment, as a basis of fixing a freight rate or charge.

There is a further proposition involved in the decision of this case. This point was included in a proposition of law submitted by the defendant to the trial court, and the refusal of the trial court to hold it, as correctly stating the law, is assigned as error, but the point is in no way referred to by the defendant either in its brief or in its reply brief, nor is it referred to in any way by the plaintiff in its brief. The proposition of law referred to was to the effect that the Illinois Central Railroad was the agent of the plaintiff for the purpose of arranging with the defendant the contract for the shipment of the goods involved in this suit and that the plaintiff is bound by the acts of the Illinois Central as such agent. In our opinion, that proposition correctly states the law as applicable to the facts in this case. It is clear from the facts that it must have been known to the plaintiff at the time that the shipment was delivered to the Chicago & Northwestern Railroad at Kenosha, Wisconsin, that the bill of lading then issued did not cover the shipment to its ultimate destination at the Panama Canal. That bill of lading provided that the

freight was to be prepaid. The freight was then prepaid by the plaintiff to the Chicago & Northwestern Railroad and covered the charges from Kenosha to New Orleans. It has already been pointed out that this was an interstate shipment to the port of trans-shipment, and from there on it was not. For these reasons it must have been clear that a new bill of lading would be issued at the port of trans-shipment to cover the consignment from that port to the point of ultimate destination, and this bill of lading would necessarily be issued by the carrier receiving the goods at New Orleans to the carrier delivering the goods at that point, which was the Illinois Central Railroad.

Furthermore, it appears from the stipulation of facts that the bill of lading issued by the defendant and delivered to the Illinois Central Railroad Company designates the plaintiff as the shipper of the consignment in question and calls for a total of steamship freight charges amounting to $7.24, and it was further stipulated by the parties that this amount was paid by the plaintiff direct to the defendant. Presumably, this remittance in payment of the freight charges made by the defendant was forwarded by the plaintiff on receipt of the bill of lading issued by the defendant and forwarded to the plaintiff by its agent, for that purpose, the Illinois Central Railroad.

The issues or questions involved in the other propositions of law submitted to the trial court by the defendant all of which were refused, need not be set forth further, inasmuch as they are all covered in what we have stated in this opinion, with respect to the contentions of the respective parties.

For the foregoing reasons, we are of the opinion that the liability of the defendant is fixed by the terms of the bill of lading issued by it at New Orleans and on which the plaintiff bases this action, and that the limitation of value of the shipment involved, as stipu-

lated in that bill of lading, is valid, and as a consequence the extent of the liability of the defendant, for the loss of the goods consigned, is the sum therein specified, namely, $100. The defendant having tendered that amount to the plaintiff and the plaintiff having received it, there could be no further liability in this case on the part of the defendant, and, therefore, the judgment of the municipal court is reversed.

*Judgment reversed.*

O'CONNOR, P. J., and TAYLOR, J., concur.