**UNITED STATES v. HENNING et al.**

(District Court, S. D. Alabama. August 18, 1925.)

**1. Criminal law ⊕⟹97(3)—Intoxicating liquors ⊕⟹246—Power to arrest ship and those thereon seeking to import liquor held to extend to distance which can be traveled in one hour from coast and not from beacon on reef in sea.**

Power of government to arrest ship and those thereon, seeking to import liquor into United States, under treaty between United States and Great Britain (article 2, § 3), extends to distance which can be traveled in one hour from coast line proper, and not from beacon on reef in sea.

**2. Criminal law ⊕⟹97(3)—Intoxicating liquors ⊕⟹246—"Possessions" as used in treaty relating to power to arrest ship and those thereon seeking to import liquor construed to mean territorial possessions.**

In treaty between United States and Great Britain (article 2, § 3), giving power to arrest ships and those thereon seeking to import liquor within one hour's sailing distance from coast of United States, its territories or its possessions, word "possessions" has reference to such territories and possessions as Porto

Rico and Hawaii and not to beacons or marine structures beyond coast line.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Possession.]

**3. Criminal law ⊕⟹97(3)—Intoxicating liquors ⊕⟹246—Treaty between United States and Great Britain held to contemplate proceedings for attempting to import liquor both against British vessels and British nationals thereon.**

Treaty between United States and Great Britain (article 2, § 3), giving former power to arrest British vessels and persons thereon seeking to import liquor into United States, contemplates both proceedings against British vessels and criminal prosecutions against British nationals thereon.

**4. Criminal law ⊕⟹97(3)—Intoxicating liquors ⊕⟹246—Treaty between United States and Great Britain, relating to power to arrest vessels and persons seeking to import liquor into the United States, construed to extend territorial waters of United States to one hour's travel from coast.**

Effect of treaty between United States and Great Britain (article 2, § 3), relating to power of former to arrest vessels and persons seeking to import intoxicating liquor into United States, is to extend territorial waters of United States from three marine miles to one hour's travel as to such vessels and persons on her, if laws of United States are intended to be violated.

**5. Criminal law ⊕⟹338(1)—On seizure of British vessel, and prosecution of crew for attempting to import intoxicating liquor by transhipment into other boats, government may prove speed of such boats as are ordinarily used in vicinity.**

Under treaty between United States and Great Britain, art. 2, § 3, permitting arrest of whisky runners and vessels within one hour's sailing distance from coast, and providing that, if some other vessel is to be used in transporting liquor, then speed of such other vessel shall determine distance, on seizure of British vessel and prosecution of crew for intent to import intoxicating liquor, government may prove speed of such boats as are ordinarily used in that vicinity to determine distance of vessel from coast, where actual boats used cannot be identified.

John B. Henning and others were convicted of possession and transportation of intoxicating liquor, and they move for a new trial. Motion overruled.

Joseph W. John, Asst. Dist. Atty., of Mobile, Ala., for the United States.

Outlaw & Kilborn, of Mobile, Ala., for defendants.

ERVIN, District Judge. The defendants are the master and crew of the British vessel Frances E, which sailed from Havana, Cuba, April 14, 1925, under clearance for Trujillo, Honduras, and were arrested by

the United States coast guard cutter Saukee April 24, 1925, at anchor some 16 miles off the Florida coast, and some 400 miles northeastwardly from Havana, with a cargo of liquor aboard. At the time of arrest there was less liquor aboard than called for by the manifest. The Frances E was brought into the port of Mobile, where the defendants are prosecuted.

The second, third, and fourth counts of the information charge a violation of the Volstead Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), charging possession and transportation of intoxicating liquor. All charge the attempt and intent to import the liquor into the United States. Each count contains the following amendment as to the point at which the arrest was made: "Which point was then and there less than the distance from the coast of the United States that could be traversed within one hour by the vessel in which it was intended by the defendants to convey the said liquor into the United States." The original information had charged that the Frances E could make the distance in one hour.

There was evidence tending to show that part of the liquor on board had been unladen, and that the Frances E had not been into a United States port, and did not intend herself to go into any such port; that the Frances E, instead of being on the route of her port of destination, was some 700 miles in an opposite direction. There was no evidence that any particular boat had been out to her from shore. There was evidence that such boats, as ordinarily were used in that locality to go out to the rum ships and bring the liquor from them ashore, are fast, and could easily make the distance from the Frances E to the shore in one hour, but that the Frances E could not do it.

The point where the Frances E was anchored was 12 miles west of Sea Horse Reef beacon on the west coast of Florida and about 16 miles west of the coast of Florida. This beacon is a structure built on a shallow reef, and projecting up out of the water, but the reef is wholly under water.

[1] It is contended by the government that this beacon is under the terms of section 3 of article 2 of this treaty (43 Stat. ——), to be treated as the point from which the one hour's time is to be estimated. I cannot concede this construction. The language is: "The rights conferred by this article shall not be exercised at a greater distance from the coast of the United States, its territories or possessions, than can be traversed in one hour."

[2] The beacon certainly is a possession of the United States, but these words properly mean and must be held to mean as if written the distance "from the coast of the United States, the coast of its territories, or the coast of its possessions," for it was from the coast the time was to be measured. The words undoubtedly had reference to such territories or possessions as Porto Rico and Hawaii. It certainly had no reference to marine structures erected in the water and having no coast.

There is another aspect, however, on which the case was properly submitted to the jury. I charged the jury: That, if they were satisfied beyond a reasonable doubt that the defendants did not intend to transport the liquor cargo to the port named in her papers, but did intend to convey it to the United States by transporting it in the Frances E to a point near the coast of the United States, there to be delivered to other vessels which would come out on the high seas and receive their cargoes from aboard the Frances E, and that they brought the said Frances E to a point within one hour's travel by such boats as were ordinarily used for that purpose in that locality, then there was a right to seize the Frances E and to arrest the defendants, provided the Frances E was, when boarded, within such one hour's travel of the coast of the United States. That, if the defendants had no particular delivering boat in mind, but intended to deliver the liquor cargo to such boat or boats as came out to the Frances E, then it would be unnecessary to prove the speed of any particular boat, but the jury could look to the testimony as to the speed of such boats as were ordinarily used for that purpose in that locality. That, if the jury also believed beyond a reasonable doubt that it was the purpose and intention of the defendants to so possess, transport, and deliver the liquor into the United States without paying any import duties on same, they should convict them, but, if they had a reasonable doubt either as to the Frances E being at the time of boarding her within such distance of the shore of the United States, or of the intention or attempt of the defendants to import such liquors into the United States without the payment of any import duties, then the defendants should be acquitted. The jury found the defendants guilty on all the counts, and they were accordingly sentenced.

I am now urged to set aside the conviction and grant a new trial, because I said in my charge to the jury that they might

look to the evidence as to the speed of such vessels as were ordinarily used to transport liquor from the rum vessels to the shore, while I was confined to the speed of the Frances E, and as the proof showed she could not make the distance of 16 miles in one hour, and there was no proof that any particular transhipping boat was intended to be used defendants should have been discharged.

The question depends on the provisions of the treaty between the United States and Great Britain. These provisions, so far as they bear on the question, are as follows:

"Article 1. The high contracting parties declare that it is their firm intention to uphold the principle that 3 marine miles extending from the coast line outwards and measured from low-water mark constitute the proper limits of territorial waters.

"Art. 2. (1) His Britannic majesty agrees that he will raise no objection to the boarding of private vessels under the British flag outside the limits of territorial waters by the authorities of the United States, its territories or possessions in order that inquiries may be *addressed to those on board* and an examination be made of the ship's papers for the purpose of ascertaining whether the vessel or *those on board are endeavoring to import or have imported* alcoholic beverages into the United States, its territories or possessions in violation of the laws there in force. When such inquiries and examination show a reasonable ground for suspicion, a search of the vessel may be instituted. [Italics mine.]

"(2) If there is reasonable cause for belief that the vessel has committed or is committing or attempting to commit an offense against the laws of the United States, its territories or possessions prohibiting the importation of alcoholic beverages, the vessel may be seized and taken into a port of the United States, its territories or possessions for adjudication in accordance with such laws.

"(3) The rights conferred by this article shall not be exercised at a greater distance from the coast of the United States its territories or possessions than can be traversed in one hour by the vessel suspected of endeavoring to commit the offense. In cases, however, in which the liquor is intended to be conveyed to the United States its territories or possessions by a vessel other than the one boarded and searched, it shall be the speed of such other vessel and not the speed of the vessel boarded, which shall determine the distance from the coast at which the right under this article can be exercised."

Article 1 is a reaffirmation that the territorial waters extend out three marine miles from the coast line. Section 1 of article 2 consents for the United States vessels to search British vessels outside the territorial waters to learn if such vessel or *those on board* are endeavoring to import alcoholic beverages into the United States in violation of its laws. Section 2 permits the seizure of the British vessel when there is reasonable cause of belief that she had committed or is committing an offense against the laws of the United States, prohibiting the importation of alcoholic beverages. Section 3 provides that these rights shall not be exercised at a greater distance from the coast of the United States than can be traversed in one hour by the suspected vessel, or, if some other vessel were to be used in transporting the liquor from such vessel to the United States, then the speed of such other vessel is to determine the distance.

[3] Remembering, first, that in section 1, art. 2, the inquiry provided for is, not only the intent of the vessel, but of the persons on board of her, then in section 3 the inquiry as to the distance from the shore is directed, first, to the speed of the suspected vessel, and then, if she was not going in, to the speed of the assisting vessel, I conclude that the treaty contemplated both proceedings against British vessels and criminal prosecutions against British nationals on such vessels.

The agreement between the two governments is quite comprehensive, and broad, general terms are used. The agreement was made in light of the practice then being used to illegally import liquor into the United States by having a vessel bring a liquor cargo to a certain distance of our coasts and lie there waiting for any small vessel to come out and take off portions of the cargo and transport same into this country; then, when the cargo is exhausted, the vessel would go back and reload without ever entering a United States port or the port of destination named in her papers.

[4] The effect of the treaty is to extend the territorial waters of the United States from three marine miles to the one hour's travel, as to the liquor laden vessel and persons on her, when the United States laws are intended to be violated.

[5] It seems clear to me that, where the liquor cargo is intended to be transhipped by such boats as may come out for that purpose, but no one of them can be identified, the government may prove the speed

of such boats as are ordinarily used in that vicinity, for the purpose of determining the distance of the British vessel from the United States coast.

An order will be entered overruling the motion for a new trial.