**UNITED STATES ex rel. PANTOJA et al. v. McCANDLESS, Commissioner of Immigration.**

District Court, E. D. Pennsylvania.
December 11, 1928.

Adrian Bonnelly, of Philadelphia, Pa., for relators.

G. W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

### Fact Situation.

DICKINSON, District Judge. The relators are being held under warrants of deportation. There is at least one fact situation of the case which makes the cause of the relators an appealing one. They were married in the United States September 9, 1925, and have one child, now of the age of 19 months, which was born here. This child must, of course, be deported along with its parents. The father came to this country as a seaman on October 3, 1919. It is asserted on his behalf that he cannot be lawfully deported, because in the case of seamen deportation proceedings must be taken within three years.

The other relator (the wife) is held for deportation to Mexico, a country which it is averred she has never even seen. She is by birth a Briton and English, but came to this country from Argentina. She entered originally as a nonimmigrant visitor, but, having married within two weeks after she came here, she has since remained with her husband, doubtless in ignorance of the truth that this gave her no right to remain.

### The Answer.

The respondents, as does counsel who appears for them, feel as much as others the hardship presented in this case. The law, however, which is being enforced, is a law which has become necessary to the well-being of our country. It is unavoidable that such a law should create situations of individual hardships, but the appeal of such cases must be resisted for the general good.

(1) The discharge of the husband relator is opposed on the ground that the warrant was issued in time because: (a) The time limit is not three years, but five. (b) It runs from the relator's last entry, not his first.

(2) The deportation of the wife relator

to Mexico, rather than Argentina, the country from which she came, or England, the country of origin, was out of a feeling of kindness to her, in order that she might not be separated from her husband. If this order cannot be enforced in its terms, then the court is asked to amend the warrant of deportation, or to afford opportunity for its amendment.

1. Respecting the point raised of whether the order to deport the husband was made in time, we must make choice between arguments addressed to us by counsel, each of whom is familiar with all the legislation respecting immigration and with the established practice thereunder. This we do with much diffidence, and particularly so as we do not have access at the time of this writing to the acts of Congress. There would seem to be in the general scheme of this legislation a distinction made between "immigrants" who come to this country as sailors and those who come merely as sailors who are "nonimmigrants," as there is also between those whose entrance is lawful and those whose entrance is otherwise.

Section 15 of the Immigration Act of May 26, 1924 (8 USCA § 215), permits an alien of the sailor class to enter "temporarily," but "solely in the pursuit of his calling." The limit of time of his sojourn and the conditions of his entrance are as the regulations of the Department of Labor shall prescribe. This time limit we understand to have been fixed at 60 days, and the condition imposed is that he shall not engage in any other calling or occupation than that of a sailor. If he outstays his time limit or violates this condition, he loses his status as a "nonimmigrant," and is subject to deportation as provided for in the case of any immigrant alien unlawfully in the United States. In such cases the warrant may issue at any time within five years.

We may pause here for the following comments: The regulations essay to do, inter alia, four things: (1) To fix the time limit of stay in the country; (2) to prescribe the condition of not engaging in any occupation other than that of a sailor; (3) to forfeit the status of the sailor as such; and (4) to either deprive such sailor of the benefit of all statutes of limitations or to establish one for five years. We have put the fourth provision in the alternative, because a recalcitrant sailor "shall be deported at any time thereafter" (which implies no limit), but "in accordance with the provisions of section 14 of the act" (8 USCA § 214), which prescribes by reference a five-year limit. The

regulations might lawfully provide for what we have designated as (1) and (2), but they could not further curtail human liberty than as authorized by the act of Congress. The three-year limitation is prescribed by section 19 of the cited act (8 USCA § 166). This would seem to be directed to alien seamen who enter unlawfully, not to those who overstay their time after a temporary, but none the less lawful, entrance. No reason is suggested, and none is in sight, for treating a sailor lawfully in the country, who has merely overstayed his 60-day time limit, more harshly than one who is unlawfully in the country. If, however, the law so provides, the court must enforce each provision.

We have been unable to follow the argument of either counsel, doubtless because of our want of familiarity with the immigration laws. The case has been argued pro and con as if the statutes in question were statutes of limitation. If they were, the limitation could not begin to run until the commission of the act which gave cause for deportation. They go, however, to the power of the immigration officials to deport. In this respect they are analogous to a statute which gives a right of action at law or in equity upon condition that it be brought within certain time limits. This differs in many important respects and consequences from a statute of limitation.

Viewing the acts of Congress in question as imposing a condition upon the exercise of the power to deport, we have the question of whether this time limit is to date from the date of the first voyage of the relator to these shores or the latest. It would seem to be an admitted fact in the case that he had the right to remain but 60 days. He came here October 3, 1919, for the first time, and his latest voyage landed him here on December 7, 1925. If, therefore, the pertinent date be that of his first landing, it makes no difference whether the disputed limit be five years or three, and if the pertinent date be that of his latest voyage, again it matters not whether the time be three years or five. The sole question, in consequence, is from which date we should reckon.

It is urged on behalf of the relator that, since October 3, 1919, he has never been out of the United States. This, however, is true only in the sense that the deck and forecastle of an American vessel is soil of the United States. It is said that the thought is a legal fiction. So it is; but the fictions of the law are the most stable and substantial facts known to it. To simplify the question, take the case of an alien sailor, who as a

British subject sails from Liverpool to a port in this country. He is admitted as a sailor temporarily with a 60-day limit of stay. Within that time he ships on an American vessel, which touches at Japanese, Chinese, and finally a Mexican port; he remaining on board until he again lands at a port in this country. The concept that he has not been out of the country is clear enough, on the fiction of which we have spoken. If his second voyage is a second entry into this country, from what country does he come; and, if he is to be deported, what is the country "whence he came"? On the other hand, just as embarrassing questions can be asked from the other side. The sailor spoken of had the right to stay in the country only 60 days. Could he then ship on an American vessel without subjecting himself to the penalty of deportation?

The only escape from many imagined dilemmas is to give, as is often done, a different meaning to the same word under different situations and uses. When speaking of sailors, above referred to, remaining in the United States for more than 60 days, "in the United States" means remaining within its territorial limits. For many purposes, however, including an interpretation of the immigration law, an American vessel is American soil. When, therefore, one who is in the United States boards an American vessel, and remains on board of her until her return to her home port, he cannot be classed as an alien immigrant "coming from" any other country, no matter at how many foreign ports the vessel may have touched, for he has never (for immigration nor for many other purposes) been out of the United States.

The conclusion reached is that the relator, Avelino Pantoja, is illegally deprived of his liberty.

2. Respecting the other relator, Frances Pantoja, it is in effect conceded that she cannot lawfully be deported to Mexico. We would, of course, favorably incline the ear to any suggestion from the Department of Labor that time be given to have the process amended. This writ, however, was sued out August 28, 1928. Since then, although apprised of this objection to the warrant of deportation, no correction of it has been made. We assume, from this, that the Secretary of Labor does not care to make the amendment. We appreciate why he may not care to take this step, and most surely are in accord with him in this.

The relators, Avelino Pantoja and Frances Pantoja, are each and both discharged without day.