**UNITED STATES LINES COMPANY,**
Libelant,

v.

**EASTBURN MARINE CHEMICAL COMPANY, Inc., Respondent-Petitioner,**

v.

**The TRAVELERS INSURANCE COMPANY, Impleaded Respondent.**

United States District Court
S. D. New York.
Sept. 27, 1963.

882

Emanuel Thebner, New York City, for respondent-petitioner.

Terhune, Gibbons & Mulvehill, New York City, for impleaded respondent; John G. Donovan, New York City, of counsel.

DAWSON, District Judge.

The question presented on this motion is whether or not an accident occurring on an American flag ship berthed in Spain is covered by an insurance policy where the policy by its terms applies only to accidents "within the United States of America, its territories or possessions, or Canada." It is a case of novel impression.

This issue comes up on a motion and cross-motion for summary judgment by respondent-petitioner, Eastburn Marine Chemical Company, Inc. (Eastburn) and impleaded respondent, The Travelers Insurance Company (Travelers) pursuant to Rule 56 of the Rules of Civil Procedure. Suit was originally brought in admiralty by libelant United States Lines Company (Lines) against Eastburn for breach of warranty and negligence which allegedly caused injury to one of Lines' seamen. Travelers was impleaded on the basis of a comprehensive general liability policy entered into between Travelers and Eastburn.

No factual issues are presented by this motion; and there is but one legal issue. This issue has been formulated in the Pre-Trial Order as follows: Was the accident to Angus O. Collins on July 14, 1960, aboard the SS AMERICAN ARCHER anchored at Pasages, Spain, New Quay, Berth No. 2, an accident within the United States of America, its territories or possessions or Canada, within the meaning of Issue IV of the Insuring Agreement.

The policy involved in this case is a standard form policy. The named insured is "Eastburn Engineering Co., Inc. and Eastburn Marine Chemical Co., Inc." The business of the insured is given as "Detergent Mfg." Issue IV of the Insuring Agreement reads as follows:

"POLICY PERIOD TERRITORY. This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada."

## THE LAW

■■ Although the suit was brought in admiralty, admiralty law is not involved in this motion. The applicable law is the law of New Jersey. The policy was a New Jersey contract which became effective upon its delivery to respondent's insurance agent at his office in Morristown, New Jersey. Rules of construction in insurance contracts are the same as the rules for contracts in general but with one special rule: if the language employed is ambiguous, or there is doubt or uncertainty as to its meaning, a contract of insurance prepared by an insurance company will be construed liberally in favor of the insured and strictly as against the insurer. Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137. (1934).

Obviously, the phrase "within the United States of America, its territories or possessions" can have many different meanings depending on the context. Prior authorities using similar phrases in different contexts are not controlling, but they may nevertheless serve as a guide in interpreting the meaning of the phrase at bar.

A vast body of law has developed on an international scale regarding the choice of law to govern a particular transaction or occurrence. Several general principles have developed, most prominent of which is the principle determining jurisdiction by reference to the place where the offense was committed. See, Harvard Research in International Law: Jurisdiction with respect to Crime, 29 Am.J.Int'l L.Supp. 443, 445 (1935). There early evolved an extension of this principle which treated a ship as a part of the territory of the country whose flag was flown. Statements of the following sort are common:

"A merchant ship on the high seas is of the country whose flag she flies, and the law of the flag applies to the right of action which arose on those seas. Jurisdiction and the laws of the nation accompany the ship not only over the high seas but every where else she may be waterborne." Radovcic v. The Princ Pavle, 45 F. Supp. 15, 16 (S.D.N.Y.1942) (Holding that the Yugoslav Workmen's Insurance Law governs injuries to a Yugoslav citizen on a Yugoslav vessel on the high seas en route to the United States).

■ There are really two questions which must be answered in determining which law applies to a particular transaction or occurrence: (1) which country or countries have "jurisdiction" (in the sense of the reach of the legislative power rather than the reach of the processes of the courts) over the transactions or occurrences; (2) does the statute or rule of law apply to the transaction or occurrence in question. In answering this latter question courts often have had to face language similar to the phrase in question in the case at bar.

■ The results reached have differed according to the purpose of the particular statute. Normally the word "territories" is used as including only the portions of the United States territorial possessions which are organized and exercising governmental functions under act of Congress. In re Lane, 135 U.S. 443, 10 S.Ct. 760, 34 L.Ed. 219 (1890). But the use of the word "territories" depends on the character and aim of the act. People of Puerto Rico v. The Shell Co. (P.R.), Limited, 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937). The Panama Canal Zone is not always included as "Territory of the United States." Macomber & Whyte Rope Co. v. United Fruit Co., 225 Ill.App. 286. A beacon owned by the United States is not one of its "possessions" within the meaning of the phrase "from the coast of the United States, the coast of its territories, or the coast of its possessions" as used in a treaty between the United States and Great Britain. United States v. Henning, 7 F.2d 488 (S.D.Ala. 1925). Areas in Bermuda leased to the United States by the British Government for 99 years are neither territories nor possessions of the United States within the meaning of the Fair Labor Standards Act. Connell v. Vermilya-Brown Co.;

Inc., 73 F.Supp. 860 (S.D.N.Y.1946). Residence in the Philippine Islands was held not to be residence "within the United States" for naturalization purposes. United States v. Kummer, 300 F. 106 (E.D.N.Y.1924). In United States ex rel. Pantoja v. McCandless, 3 Cir., 29 F.2d 586 (E.D.Pa., 1928), the court said:

> "The only escape from many imagined dilemmas is to give, as is often done, a different meaning to the same word under different situations and uses. When speaking of sailors, above referred to, remaining in the United States for more than 60 days, 'in the United States' means remaining within its territorial limits. For many purposes, however, including an interpretation of the immigration law, an American vessel is American soil. When, therefore, one who is in the United States boards an American vessel, and remains on board of her until her return to her home port, he cannot be classed as an alien immigrant 'coming from' any other country, no matter at how many foreign ports the vessel may have touched, for he has never (for immigration nor for many other purposes) been out of the United States." (29 F.2d at p. 588).

It is on the basis of these cases on choice of law and the reach of a statute or rule of law that Eastburn bases its contention that an American flag vessel is part of the "United States of America, its territories or possessions." None of the cases are controlling since they all depend on the purpose of the particular statute involved. But there is a more fundamental problem with Eastburn's authority; it is involved with choice of law or the reach of a statute, not with interpretation of a private contract. For law in point, one should look to cases involving territorial limits in insurance policies. There is surprisingly little authority in this area, however.

*Territorial Limits in Insurance Policies*

In Casler v. The Connecticut Mutual Life Insurance Company, 22 N.Y. 427 (1860), it was held that the phrase "set-tled limits of the United States" in a life insurance policy was to be read as meaning the "established boundaries" of the United States, not "the region of the settlements." Recovery was allowed when the insured died in the wilds of the South Fork of the Platte on the overland route to California.

Under an indemnity policy covering only injuries "received within the United States (not including its parts beyond the seas), Mexico and Canada," the Canal Zone on the Isthmus of Panama has been held to be excluded. Currie v. Continental Casualty Co., 147 Iowa 281, 126 N.W. 164, (1910). The opinion concentrated on the meaning of the phrase "beyond the seas." At page 165 of 147 Iowa, at page 165 of 126 N.W. it was stated: "Had the limitations been to the United States alone, a more difficult question would have been presented."

■ With so little authority, the basic question becomes: does the law of the flag concept, developed in a context of choice of law and the reach of a statute or rule of law, reach beyond that context to become incorporated into the territorial restriction clause of an insurance policy. The law of the flag concept, even within the field in which it developed, is not absolute. It is but one factor (albeit one of the most important) in a search for purpose and in a balancing of interests. See, Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). Moreover the law of the flag is applied largely on the pragmatic basis that some law must be chosen to govern shipboard and no more workable rule has been proposed. See Lauritzen v. Larsen, supra, 345 U.S. at p. 585, 73 S.Ct. at p. 929, 97 L.Ed. 1254; McCulloch v. Sociedad Nacional de Marineros de Honduras, supra, 372 U.S. at p. 21, 83 S.Ct. at p. 677. This factor is not present in the insurance field, for the contracting parties can write a policy as they wish and no insuperable problems would arise from double insurance or lack of insurance.

The basic question, of course, is one of the intent of the parties, but there is no indication here that anything other than the ordinary meaning of the words was intended. Eastburn argues that the fact that its name includes the word "Marine" shows an intention to cover accidents on American flag ships. This argument is clearly faulty. Only one of the two names on the policy contained the word "Marine" and there is no indication in that word that ships supplied by Eastburn would leave the United States nor that they would fly the American flag. Moreover the contract is a form contract drawn by Travelers, and its meaning should not vary with the name of the insured.

Travelers, on the other hand, argues that the phrase indicates a clear intention on its part not to become involved in litigation in foreign ports. That argument fails here also, since accidents on American flag ships will ordinarily be litigated in United States courts. Even when foreign forums are used, the law which is normally applicable would be United States law.

This decision, therefore, must rest on the ordinary meaning of the phrase "within the United States of America, its territories or possessions." It is not necessary to this decision to decide the exact limits of this phrase. Interesting questions may arise concerning the three mile limit, or voyages from one United States port to another United States port, but these questions need not plague us here. Suffice it to say that the ordinary meaning of the phrase does not include an accident occurring on an American flag ship berthed in Spain.

There is no ambiguity in the policy and therefore the rule that the policy must be construed against the insurance company where an ambiguity exists is not applicable. The language is not ambiguous. The phrase "within the United States of America, its territories or possessions" obviously is a territorial definition and not a juridical definition. This becomes clearly apparent when it is observed that the heading of the particular paragraph of this policy with which we are concerned is "Policy Period, Territory."

Even though an American flag ship may for some purposes be deemed juridically a part of the United States, it does not follow that it is territorially a part of the United States, and it is in the territorial sense that this phrase is used. The Court must endeavor to determine what the parties had in mind in writing this phrase, although it may be assumed that they had never considered the matter and had nothing in mind as to it. However, the ordinary concept of "territory" of the United States, or "possessions of the United States, would not include a ship in a foreign port in a foreign land. It must be assumed that the parties did not intend a construction different from that which ordinarily would be given to those words.

Respondent-petitioner Eastburn's motion for summary judgment is therefore denied and impleaded respondent Traveler's motion for summary judgment dismissing the complaint is granted. So ordered.